228 N.J. Super. 180 (1988)
549 A.2d 446
IN THE MATTER OF THE ASSOCIATION OF TRIAL LAWYERS OF AMERICA, NEW JERSEY, AND CHAPTER 197 OF THE LAWS OF 1987.
Superior Court of New Jersey, Appellate Division.
Argued September 19, 1988.
Decided October 13, 1988.
*181 Before Judges DEIGHAN, BAIME and D'ANNUNZIO.
Jerry Fischer, Deputy Attorney General, argued the cause for Intervenor-Appellant (W. Cary Edwards, Attorney General, attorney; Deborah T. Poritz, Assistant Attorney General, of counsel; Jerry Fischer on the brief).
William S. Greenberg argued the cause for respondent (Greenberg & Prior, attorneys; William S. Greenberg of counsel; William S. Greenberg, Karen L. Jordan and Adam S. Henschel on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
We granted leave to appeal to review an interlocutory order entered by the Superior Court, Chancery Division, denying the Attorney General's motion to dismiss a complaint filed by the New Jersey Chapter of the Association of Trial Lawyers of America (ATLA) challenging the constitutionality of the recently enacted Products Liability Act (N.J.S.A. 2A:58C-1 et seq.). The pivotal question is whether ATLA, either in its own right or as a representative of others, has an interest in the subject matter sufficient to support this action. We hold that it does not.
The salient facts are not in dispute and are essentially a matter of public record. On July 22, 1987, our Legislature adopted the Products Liability Act. The articulated objective in enacting the statutory scheme was to clarify "certain matters *182 relating to actions [seeking compensation] for harm caused by products, including certain principles under which liability is imposed and the standards and procedures for the award of punitive damages." N.J.S.A. 2A:58C-1 a. We need not describe the Act in detail. Suffice it to say, it contains substantive provisions, setting forth rules of liability and defenses, see N.J.S.A. 2A:58C-2, 3, 4, 6 and 7, and procedural requirements, see N.J.S.A. 2A:58C-5, mandating bifurcated proceedings for the determination of compensatory and punitive damages.
In January 1988, ATLA instituted an action under the federal Civil Rights Act (42 U.S.C.A. § 1983) and the New Jersey Declaratory Judgment Act (N.J.S.A. 2A:16-50 et seq.), attacking the constitutionality of the new products liability law. In its complaint, ATLA contended that the statute (1) "impaired the obligation of contracts between manufacturers and sellers of products and the public," contrary to Art. I, § 10, cl. 1 of the United States Constitution, (2) violated the cognate impairment of contracts prohibition contained in the New Jersey Constitution (Art. IV, § VII, par. 3), (3) constituted an unlawful invasion of the Supreme Court's rule-making prerogative (Art. VI, § 2, par. 3), (4) impinged upon the right to equal protection and (5) deprived litigants of the right to trial by jury.
No defendant was named in the suit. Pursuant to R. 4:28-4(a), however, ATLA notified the Attorney General of the pending action. The Attorney General intervened and immediately moved to dismiss the complaint for failure to state a claim, R. 4:6-2(e), contending that ATLA lacked standing.
Following oral argument, the trial court issued a written opinion, holding that ATLA had the requisite standing to maintain the action and that its complaint presented a justiciable controversy. Noting that ATLA is a non-profit organization composed of trial attorneys, the court concluded that it could lawfully assert the rights of its members and their clients. ATLA was thus said to possess a sufficient personal stake in the litigation. The court found, alternatively, that the case *183 raised questions of "great public interest" sufficient to afford standing even assuming that ATLA's private interest was slight. We disagree with these conclusions and thus reverse.
As we noted at the outset of our opinion, this suit was commenced under the Declaratory Judgment Act. That statute empowers the courts to declare rights, status and other legal relations "to afford litigants relief from uncertainty and insecurity." U.S.A. Chamber of Commerce v. State, 89 N.J. 131, 140 (1982) Its purpose is to end uncertainty concerning the legal rights and relations of parties before they have suffered ineradicable damage or injury for which only a compensatory or coercive remedy can provide redress. N.J. Ass'n for Retarded Citizens v. Human Services, 89 N.J. 234, 242 (1982). See also N.J.S.A. 2A:16-52 and 53. Toward that end it has been said that the statute constitutes "remedial legislation entitled to liberal construction and administration." N.J. Ass'n for Retarded Citizens v. Human Services, supra, 89 N.J. at 241-242. See also Union Cty. Bd. of Freeholders v. Union Cty. Park Comm'n., 41 N.J. 333, 336 (1964); Burlington Tp. v. Middle Dep't. Inspection Agency, 175 N.J. Super. 624, 628 (Law Div. 1980); Hammond v. Doan, 127 N.J. Super. 67, 72 (Law Div. 1974); N.J.S.A. 2A:16-51.
The remedy thus provided, however, is circumscribed by the salutary qualification that the jurisdiction of the courts may not be invoked in the absence of an actual controversy. New Jersey Turnpike Authority v. Parsons, 3 N.J. 235, 240 (1949) Although there is no express language in New Jersey's Constitution similar to its federal counterpart which confines the exercise of our judicial power to actual cases and controversies, compare U.S. Const., Art. III, § 2, with N.J. Const., Art. VI, § I, we have long held that we will not render advisory opinions or function in the abstract. Crescent Pk. Tenants Assoc. v. Realty Eq. Corp. of N.Y., 58 N.J. 98, 107 (1971). Nor will we entertain proceedings by litigants who are mere intermeddlers, interlopers or strangers to the dispute. Id. at 107. See also Bergen County v. Port of New York Authority, et al., 32 N.J. *184 303, 307 (1960); New Jersey Turnpike Authority v. Parsons, supra, 3 N.J. at 240; Baxter v. Baxter, 43 N.J. Eq. 82, 86 (Ch. 1887), aff'd 44 N.J. Eq. 298 (E. & A. 1888). In essence, "a plaintiff must have an interest in the subject matter in order to maintain a declaratory judgment action." Bergen County v. Port of New York Authority, supra, 32 N.J. at 307. This relation to the cause "is necessary to a finding that a controversy, or at least uncertainty, exists as to the status or rights" of the litigants. N.J. Home Builders Ass'n v. Div. on Civil Rights, 81 N.J. Super. 243, 252 (Ch. Div. 1963), aff'd sub nom. David v. Vista Co., 45 N.J. 301 (1965). In addition, the courts should not "decide or declare the rights or status of parties upon a state of facts which is future, contingent and uncertain." Tanner v. Boynton Lumber Co., 98 N.J. Eq. 85, 89 (Ch. 1925). It is the threshold findings of both justiciability and standing which form the basis for relief under the Declaratory Judgment Act. N.J. Home Builders Ass'n v. Div. on Civil Rights, supra, 81 N.J. Super. at 252.
These considerations have particular efficacy in the context of a challenge to the constitutionality of a statute. Deeply embedded in our jurisprudence is the settled principle against resolving disputes in advance of constitutional necessity. State v. Jones, 198 N.J. Super. 553, 559 (App.Div. 1985). In the federal arena, this doctrine was established as early as 1793, see H. Johnson, Correspondence and Public Papers of John Jay, pp. 486-489 (1891), and has been applied without significant deviation. Flast v. Cohen, 392 U.S. 83, 96 n. 14, 88 S.Ct. 1942, 1950 n. 14, 20 L.Ed.2d 947, 959 n. 14 (1968); United States v. Freuhauf, 365 U.S. 146, 157, 81 S.Ct. 547, 553, 5 L.Ed.2d 476, 483 (1961); Federation of Labor v. McAdory, 325 U.S. 450, 461, 65 S.Ct. 1384, 1389, 89 L.Ed. 1725, 1734 (1945); Muskrat v. United States, 219 U.S. 346, 348, 31 S.Ct. 250, 250, 55 L.Ed. 246, 247 (1911). While our decisions have historically taken a much more liberal approach on the issues of standing and justiciability than have the federal cases, see, e.g., Crescent Pk. Tenants Assoc. v. Realty Eq. Corp. of N.Y., supra, 58 N.J. at *185 101; Walker, Inc. v. Stanhope, 23 N.J. 657, 660-661 (1957); New Jersey Bankers Assoc. v. Van Riper, 1 N.J. 193, 196-197 (1948), we have nevertheless long recognized that "our authority is confined to deciding questions presented in an adversary context in a form capable of resolution through the judicial process." State v. Jones, supra, 198 N.J. Super. at 559-560. Whether grounded in constitutional principle or viewed as a mere policy limitation, we have avoided passing prematurely on constitutional questions. Id. at 560. Hence, "the related doctrines of standing, ripeness and mootness that have evolved over the years are incidents of the `primary conception that ... judicial power is to be exercised to strike down legislation ... only at the instance of one who is himself immediately harmed, or immediately threatened with harm, by the challenged action.'" Ibid., quoting Poe v. Ullman, 367 U.S. 497, 504, 81 S.Ct. 1752, 1756, 6 L.Ed. 989, 996 (1961). The party who seeks to "annul legislation on grounds of its unconstitutionality must be able to show not only that the statute is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury as a result of its enforcement," Poe v. Ullman, supra, 367 U.S. at 505, 81 S.Ct. at 1756, 6 L.Ed.2d at 997. See also New York v. Ferber, 458 U.S. 747, 767, 102 S.Ct. 3348, 3360, 73 L.Ed.2d 1113, 1129 (1982); Broadrick v. Oklahoma, 413 U.S. 601, 610, 93 S.Ct. 2908, 2914, 37 L.Ed.2d 830, 839 (1973); United States v. Raines, 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524, 529 (1960). In short, the judiciary does not have a roving commission to seek and destroy unconstitutionality.
In this context, we observe that the standing of nonprofit associations to litigate in varying contexts has historically been upheld in New Jersey, see, e.g., Right to Choose v. Byrne, 91 N.J. 287, 313-315 (1982); Jordan v. Horsemen's Benev. & Protect. Ass'n., 90 N.J. 422, 431-432 (1982); Knight v. Margate, 86 N.J. 374, 387 (1981); N.J. Chamb. Commerce v. N.J. Elec. Law Enforce. Comm'n., 82 N.J. 57, 67-69 (1980); Common Cause v. N.J. Election Law Enforce. Comm'n., 74 N.J. *186 231, 235-236 (1977); American Trial Lawyers v. N.J. Supreme Ct., 66 N.J. 258, 260 (1974); Crescent Pk. Tenants Assoc. v. Realty Eq. Corp. of N.Y., supra, 58 N.J. at 105-112; N.J. State Bar Ass'n. v. Northern N.J. Mortgage Associates, 22 N.J. 184, 196 (1956); Young v. Byrne, 144 N.J. Super. 10, 15-16 (Law Div. 1976), and elsewhere, see, e.g., Warth v. Seldin, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343, 361-362 (1975); Sierra Club v. Morton, 405 U.S. 727, 731, 92 S.Ct. 1361, 1364, 31 L.Ed.2d 636 (1972). Examination of these decisions discloses two distinct underpinnings for the principle according standing to such organizations. First, an association "may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." Warth v. Seldin, supra, 422 U.S. at 511, 95 S.Ct. at 2211, 45 L.Ed.2d at 362. Further, "in attempting to secure relief from injury to itself the association may assert the rights of its members, at least so long as the challenged infractions adversely affect its members' associational ties." Ibid. Second, even in the absence of injury to itself, "an association may have standing solely as the representative of its members." Ibid. In such a situation, the association must allege that its members, or any one of them, "are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." Ibid.
Neither basis for according standing to a nonprofit association is present here. Clearly, the Products Liability Act does not regulate or purport to regulate professional associations of any sort whatsoever. Nor does it in any way affect the associational rights of ATLA's members. Succinctly stated, ATLA's complaint is barren of any allegation that it, as an association, has suffered immediate or threatened injury.
So too, we perceive nothing to support ATLA's claim of representational standing. We reject ATLA's contention that it has standing because the statute directly affects the legal profession and impairs the ability of lawyers to effectively *187 represent their clients. ATLA's argument in this regard is principally grounded in the statute's procedural requirement of bifurcated proceedings pertaining to compensatory and punitive damages. See N.J.S.A. 2A:58C-5. It is argued that this provision imposes a special burden upon lawyers and directly affects their livelihood. ATLA thus contends that even though the harm allegedly caused by the statutory provision may technically not be inflicted upon it as an association, the threatened injury will necessarily fall upon its principal constituency, lawyers.
The short answer to this argument is that the products liability law does not regulate the conduct of attorneys; it merely addresses the nature of a cause of action in strict liability between a user or consumer and a manufacturer or distributor of a product. The complaint does not allege an injury, economic or otherwise, to either ATLA or its members. This failure to allege injury is not inadvertent, but rather flows from the inescapable fact that the only possible loss to attorneys is a speculative decrease in contingent fees resulting from an amorphous and presently unsubstantiated fear that the number and value of products liability claims may diminish. To be sure, the new products liability law may affect the income of attorneys. Similarly, the procedural provisions contained in the Act may perhaps make a lawyer's job more burdensome. However, this is equally true with respect to legislation pertaining to a plethora of subjects, which may have the effect of making an attorney's professional life more difficult and less attractive. Were we to recognize that type of potential harm as sufficient to accord standing, we would open the floodgates to an avalanche of needless litigation. Rather, in our view, ATLA's representational interest is too ethereal to justify judicial recognition and acknowledgment.
We emphasize the limited contours of our holding. This is not a case in which the rights of attorneys to freely practice law is so inextricably bound up and entwined with the rights of their clients as to accord them standing. We do not doubt the *188 possibility that in appropriate circumstances, an attorney's interest in vindicating his right to practice his chosen profession may be so closely linked with the rights of a client that the lawyer ought to be given standing to present both his own as well as his client's case. In such a case, the attorney's right to practice may constitute the mirror image of his client's rights, to the extent that vindication of one is consequently dependent upon vindication of the other. See, e.g., Wounded Knee Legal Defense/Offense Comm'n. v. F.B.I., 507 F.2d 1281, 1284 (8th Cir.1974); United States v. King, 536 F. Supp. 253, 263-264 (C.D.Cal. 1982); Aiken v. Obledo, 442 F. Supp. 628, 644-645 (E.D.Cal. 1977); Keker v. Procunier, 398 F. Supp. 756, 765 (E.D.Cal. 1975). Cf. Nyberg v. City of Virginia, 495 F.2d 1342, 1344 (8 Cir.1974), cert. den. 419 U.S. 891, 95 S.Ct. 169, 42 L.Ed.2d 136 (1974). Nothing of that sort is present in this case.
In sum, we perceive no legally recognizable private interest, however slight, on the part of ATLA or its members sufficient to accord standing. While the issues ATLA seeks to raise on behalf of the consuming public are undoubtedly important, see Salorio v. Glaser, 82 N.J. 482, 492 (1980); Home Builders League of South Jersey, Inc. v. Tp. of Berlin, 81 N.J. 127, 132 (1979); Terwilliger v. Graceland Memorial Park Ass'n., 35 N.J. 259, 268 (1961), aff'g. 59 N.J. Super. 205, 215 (Ch. Div. 1960); Elizabeth Federal Savings & Loan Ass'n v. Howell, 24 N.J. 488, 499 (1957); Al Walker, Inc. v. Bor. of Stanhope, 23 N.J. 657, 660-666 (1957); Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433, 476 (1952), cert. den. 344 U.S. 838, 73 S.Ct. 25, 97 L.Ed. 652 (1952), we discern no sound basis to depart from the traditional rule that one "may not claim standing ... to vindicate the constitutional rights of some third party." Singleton v. Wulff, 428 U.S. 106, 114, 96 S.Ct. 2868, 2874, 49 L.Ed.2d 826, 833 (1976), quoting Barrows v. Jackson, 346 U.S. 249, 255, 73 S.Ct. 1031, 1034, 97 L.Ed. 1586, 1594 (1953). See also Jersey Shore, Etc. v. Estate of Baum, 84 N.J. 137, 144 (1980); In re Quinlan, 70 N.J. 10, 34-35 (1976), cert. den. 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976). We are *189 thus convinced that the trial court erred by denying the Attorney General's motion to dismiss ATLA's complaint.
Accordingly, the order of the Chancery Division is reversed and the complaint is dismissed.