868 A.2d 1162 (2005)
376 N.J. Super. 48
MEDICAL SOCIETY OF NEW JERSEY, Plaintiff-Appellant,
v.
AMERIHEALTH HMO, INC. and Independence Blue Cross, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued January 4, 2005.
Decided March 16, 2005.
*1163 Edith M. Kallas, New York City (Milberg, Weiss, Bershad, Hynes & Lerach) of the New York Bar, admitted pro hac vice, argued the cause for appellant (Lite, DePalma, Greenberg & Rivas, and Ms. Kallas attorneys; Allyn Z. Lite and Ms. Kallas, on the brief).
David L. Comerford, Philadelphia (Akin, Gump, Strauss, Hauer & Feld) of the Pennsylvania Bar, admitted pro hac vice, argued the cause for respondents (Brown & Connery, and Mr. Comerford attorneys; Mr. Comerford, Edward F. Mannino, Katherine Menapace and Jeffery A. Dailey, *1164 of counsel; Michael J. Vassalotti, on the brief).
Before Judges COBURN, WECKER and S.L. REISNER.
The opinion of the court was delivered by
S.L. REISNER, J.A.D.
The Medical Society of New Jersey appeals a trial court order dismissing its complaint against AmeriHealth HMO, Inc. and Independence Blue Cross (collectively designated as "AmeriHealth"). We affirm.

I
The Medical Society, an association of 8,000 New Jersey physicians, filed suit against AmeriHealth on its own behalf and on behalf of its members. The suit alleged that AmeriHealth, a health insurer, had contracted with many of the Society's members to provide health care services to patients covered under AmeriHealth health insurance policies. The Medical Society contended that AmeriHealth had, through a variety of wrongful schemes, either denied, delayed or reduced payment to the contracting physicians for medical care which the doctors had properly provided to AmeriHealth's insureds.
The Society's brief aptly summarizes its complaint as accusing AmeriHealth of the following:
Systematically denying reimbursement to MSNJ members for medically necessary services they have rendered to enrollees in Amerihealth's plans by, inter alia:

1. routinely and unjustifiably refusing to pay for, or reducing payment for, more than one healthcare service per visit or incident  referred to as "bundling";
2. routinely and unjustifiably reducing retroactively the amount of reimbursement remitted to MSNJ members  referred to as "downcoding";
3. routinely and unjustifiably denying increased levels of reimbursement for complicated medical cases which require MSNJ members to expend extra time and resources on the treatment of the patient  referred to as "modifieres";
4. routinely and unjustifiably denying payment for procedures performed during "global periods" for unrelated procedures; and
5. routinely and unjustifiably refusing to pay for treatments by physician specialists by falsely claiming that referrals were not obtained from patients' primary care physicians.
Systematically denying payment to physicians for medically necessary services they have rendered to enrollees in AmeriHealth's plans solely to achieve internal financial targets, without regard for individual patients' medical needs by, inter alia:

1. improperly employing software programs to automatically downcode procedures and/or deny payment to physicians identified as "high utilizers," without any clinical review, oversight or justification;
2. engaging in physician profiling for the purpose of penalizing physicians who provide services in excess of Amerihealth's arbitrary "target"; and
3. improperly applying so-called "guidelines" in a manner that Amerihealth knows is unreasonable for the purpose of denying payment for coverage for medically necessary treatments.
Routinely and unjustifiably failing to make payments to physicians within the time periods prescribed by applicable provisions of New Jersey law, and routinely and unjustifiably failing to pay *1165 interest on past due claims required under applicable provisions of New Jersey law.
Failing to provide adequate staffing to handle MSNJ members' inquiries. In this regard, AmeriHealth has created and maintains an inefficient administrative system designed to frustrate payment to MSNJ members by requiring physicians to make excessive telephone inquiries to obtain proper reimbursement of claims.
Failing to provide sufficient explanation for their payment denials and reductions.
Refusing to provide participating physicians with AmeriHealth's fee schedules for Current Procedure Terminology Codes ("CPT Codes") (the codes recognized by physicians and insurers for reimbursement).
Requiring physicians "to enter into one-sided physician agreements in order for them to provide medical care to patients who receive healthcare through AmeriHealth's managed care plans."
As a result of its improper, unfair and/or deceptive scheme, Amerihealth has deprived MSNJ members of millions of dollars in lawful reimbursement for healthcare services provided to AmeriHealth's plan members which has caused great harm to the practices of MSNJ members.
The Society contended that as a result of these wrongful practices, its physician members had been harmed, and the Society had been frustrated in its organizational purpose of "striving to enhance the delivery of medical care of high quality" to New Jersey residents and had "been required to devote significant resources" in efforts to informally resolve its members' billing disputes with AmeriHealth. The Society also contended that by causing economic injury to the physicians, AmeriHealth was in turn harming the ability of their patients to obtain health care. The Society's complaint sought injunctive and declaratory relief against AmeriHealth on a variety of theories: violation of public policy, the Consumer Fraud Act, violation of the Health Care Information Networks and Technologies (HINT) Act, and tortious interference with prospective economic relations. The complaint did not seek damages.
The trial court initially stayed the case, pending the outcome of motions to certify a class in two Camden County cases filed by physicians against AmeriHealth. Zakheim v. AmeriHealth HMO, Inc., Docket No. CAM-L-6235-00 and Malloy v. AmeriHealth HMO, Inc., Docket No. CAM-L-891-01. The court entered the stay, reasoning that if the Camden County cases were denominated class actions, this case might be appropriately consolidated with them. On May 2, 2003, the Camden cases were certified as class actions. However, on September 22, 2003, the trial court dismissed a virtually identical case against Oxford Health Plans, Inc., holding that the Society's substantive causes of action all failed to state a claim and that the litigation was barred by an arbitration clause.[1] On October 31, 2003, AmeriHealth filed a motion to lift the stay and dismiss the complaint based on the Oxford decision. The Medical Society opposed the motion on the merits, asked the trial court to consolidate their case with the Camden cases, and moved for leave to amend the complaint to include claims for breach of contract and breach of the duty of good faith and fair dealing.
The trial court dismissed the claims for violation of public policy, Consumer Fraud, tortious interference, and the HINT Act, *1166 based on its prior decision in Oxford. The court also denied leave to amend the complaint to assert claims for breach of contract and breach of the covenant of good faith and fair dealing. The court reasoned that the settlement of a pending class action in Philadelphia, which raised the same claims and in which many of the Society's members were parties, might deprive the Society of standing to pursue the claims on behalf of its members, because those members would themselves be barred from suing. The court noted that "[i]n addition, there are the two pending cases in Camden County, Malloy v. AmeriHealth HMO, Inc., and Zakheim v. AmeriHealth HMO, Inc., that involve the same class of physicians and the same breach of contract issues." Finally, the court concluded that the Society lacked associational or representational standing under the third prong of the test for standing set forth in Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 343, 97 S.Ct. 2434, 2442, 53 L.Ed.2d 383 (1977).[2] The judge stated:
The association, however, has not satisfied the third prong of the test, which requires that neither the claim asserted, nor the relief requested require the individual participation of the members of the lawsuit. The breach of contract and good faith claims Plaintiff seeks to add here arise as a result of contracts that were entered into by member physicians and AmeriHealth that MSNJ was not a party to. The breach of contract claim states that MSNJ members provided medically necessary services to Defendants' plan members and that they billed Defendants in accordance with the terms of the contracts. (Plaintiff's Amended Complaint, Para. 74.) It further contends that the MSNJ members provided all necessary documentation in order to receive reimbursement, but that Defendants have failed to comply with the terms of the contracts. (Id. at Para. 75-76.) With regard to the breach of the covenant of good faith and fair dealing, Plaintiff contends that Defendants have breached the duty by engaging in acts and practices that are designed to deny, impede, delay and reduce lawful reimbursement; by failing to include interest in the amounts they have belatedly paid; by refusing to provide adequate explanation for delay, reduction or denial of payments and by failing to provide sufficient information and procedures to ensure that physician's claims for reimbursement are properly considered. (Id. at Para. 79-92.) It is simply not possible for MSNJ to prove these claims without the individualized participation of its member physicians. In order to provide proof of the claims alleged, Plaintiff would be required to consult with each physician who entered into a contract with AmeriHealth in order to receive specific factual information with regard to payment and reimbursement. Thus, individual doctors would be required to participate in the lawsuit and Plaintiff cannot satisfy the third prong of the Hunt analysis.
Because Plaintiff lacks associational standing to bring claims against Defendants, the court sees no basis for allowing an amendment. Whether Plaintiff can seek leave to intervene in the Camden County actions and bring these claims there, is properly left to the Camden County court.

*1167 II
We preface our decision with the following observations. The Medical Society has asserted a variety of claims against AmeriHealth. However, curiously, it omitted from its complaint the two most obviously applicable claims  breach of contract and breach of the duty of good faith and fair dealing. All of the Society's claims are premised on the same set of facts and, reduced to their essence, amount to a contention that the health insurer is either delaying payment or is outright refusing to make payment to the doctors for services properly rendered under their contracts. We conclude, as did the trial judge, that the complaint does not state a claim for violation of public policy, Consumer Fraud Act, and tortious interference. We also agree that the Medical Society cannot maintain an action for injunctive or declaratory relief under the HINT Act. We do not necessarily agree that the HINT Act could not, under any set of circumstances, support a private cause of action for the physicians; insofar as the Act provides a monetary remedy for the slow payment of claims, a doctor might be able to assert a claim for the ten percent interest allowed by the HINT Act, N.J.S.A. 17B:26-9d(7), as an adjunct to a damage claim for breach of contract. But we do not decide this issue, because the doctors are not parties to this case.
We agree with the trial judge that the breach of contract and breach of the duty of fair dealing claims are personal to the physicians who are parties to the contracts with AmeriHealth, and a suit asserting those claims requires the "individual participation" of the physicians in the sense that they are indispensable parties. See also N.J.S.A. 2A:16-56 (the Declaratory Judgment Act requires joinder of all parties whose interests may be affected by the suit). Further, we conclude that permitting the Medical Society to litigate those claims in an action for injunctive and declaratory relief, separate from the damage claims already being pursued by its members in the Camden County class actions, would be judicially inefficient. See also State v. Eatontown Borough, 366 N.J.Super. 626, 637, 841 A.2d 990 (App.Div.2004); Rego Indus., Inc. v. Am. Modern Metals Corp., 91 N.J.Super. 447, 453, 221 A.2d 35 (App.Div.1966) (declaratory judgment action should not be filed where there is another available, adequate remedy).
Nothing in the decision of the trial court, or in our opinion, precludes the physicians who are litigating the class actions from seeking to amend the Camden County class action complaint to include additional breach of contract/fair dealing claims premised on the factual allegations of the complaint in this case. And nothing precludes the Society from seeking to participate in that class action. The Society may also request the Department of Banking and Insurance, the agency charged by statute with enforcing the HINT Act, to investigate its claims.

III
We agree with the trial court that the complaint does not state a claim for violation of public policy. As did the trial court, we find no precedent to extend the holding of Pierce v. Ortho Pharm. Corp., 84 N.J. 58, 72, 417 A.2d 505 (1980), beyond the context of employment. Pierce does not support an independent cause of action based on a claim that a defendant's wrongful refusal to make payment under a contract violates "public policy."
We likewise find no merit in the Society's claim under the Consumer Fraud Act. First, although not specifically addressed by the trial court, we conclude that the Medical Society lacks standing to pursue its claims under the Consumer *1168 Fraud Act, N.J.S.A. 56:8-1, in light of the well-established rule that a private party may not pursue an action under the CFA solely for injunctive relief. See, e.g., Weinberg v. Sprint Corp., 173 N.J. 233, 254, 801 A.2d 281 (2002). While a consumer may seek injunctive relief in the context of a suit to recover damages for an ascertainable loss, litigation seeking exclusively injunctive relief must be pursued by the Attorney General. Ibid. We also agree with the trial judge that the Medical Society's complaint against AmeriHealth does not state a claim under the CFA. As more fully discussed in Judge Schuster's cogent opinion in the companion Oxford case, neither the Medical Society nor its members are "consumers" of any product or service provided by AmeriHealth. See City Check Cashing, Inc. v. Nat'l State Bank, 244 N.J.Super. 304, 309, 582 A.2d 809 (App.Div.), certif. denied, 122 N.J. 389, 585 A.2d 391 (1990); In re Managed Care Litig., 298 F.Supp.2d 1259, 1303-04 (S.D.Fla.2003). Lemelledo v. Beneficial Mgmt. Corp., 150 N.J. 255, 265, 696 A.2d 546 (1997), is not on point, as this case does not involve AmeriHealth's sale of insurance to consumers.[3]
We next address the Society's claims under the HINT Act. L.1999, c.154. The Society contends that the doctors have a private right of action to enforce the provisions of the HINT Act requiring that insurers pay "clean" claims within thirty days of submission, and requiring insurers to pay ten percent interest on late payments. N.J.S.A. 17B:26-9.1(d). The HINT Act may provide a private cause of action for doctors who file lawsuits to collect overdue payments from insurers, and who in that context seek to collect the statutory ten percent interest penalty mandated by the HINT Act. Allowing the HINT Act to be privately enforced by doctors suing for overdue payment would appear to further the purpose of the Act by permitting the doctors, for whose benefit the statute was enacted, to recover the interest on those payments. See Statement to P.L.1999, c. 154 (approved July 1, 1999). We need not decide that issue here, however, because the doctors, who would have standing to raise the issue, are not before us.
Addressing the Medical Society's claim for declaratory and injunctive relief under the HINT Act, we find no basis in the purpose, wording, or legislative history of the HINT Act, for permitting a third party such as the Medical Society, to file a private lawsuit to enforce the Act.
Our courts "have been reluctant to infer a statutory private right of action where the Legislature has not expressly provided for such action." R.J. Gaydos, Ins. v. Nat'l Consumer, 168 N.J. 255, 271, 773 A.2d 1132 (2001). In determining whether a statute permits "an implied private right of action" we must consider the following factors: whether "plaintiff is a member of the class for whose special benefit the statute was enacted"; "any evidence that the Legislature intended to create a private right of action under the statute"; and whether "it is consistent with the underlying purposes of the legislative scheme to infer the existence of such a remedy." Id. at 272, 773 A.2d 1132 (citing Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975)). We generally do not infer a private right of action "where the statutory scheme contains civil penalty provisions." Id. at 274, 773 A.2d 1132 (citations omitted). This is specifically the case with insurance statutes. Id. at 275, 773 A.2d 1132. *1169 Applying these principles, we conclude that the Medical Society cannot maintain a private lawsuit to enforce the HINT Act. The Act does not specifically authorize private parties to file enforcement actions. The Act, by its terms, is to be enforced by the Commissioner of Banking and Insurance, who, in conjunction with the Commissioner of Health and Senior Services, is to adopt regulations to further the purposes of the Act. N.J.S.A. 17B:30-24; N.J.A.C. 11:22-1.2. The Commissioner is also authorized to investigate insurers to determine whether there is "any unfair method of competition ... or deceptive act or practice prohibited by" the HINT Act. N.J.S.A. 17B:30-16. The Commissioner adopted comprehensive regulations, which, among other things, require health insurers to file detailed reports concerning their history of payment and denial of claims and provides for annual audits of their claims payment history. N.J.A.C. 11:22-1.9. The regulations also authorize the Commissioner to take enforcement action against insurers that violate their prompt payment obligations, including failure to pay interest on late claims. The Commissioner may impose a $10,000 penalty for each violation. N.J.A.C. 11:22-1.10. The Commissioner of Health and Senior Services is also authorized to seek injunctive relief in court against a health insurer that engages in unlawful conduct. N.J.S.A. 26:2J-24(e).
Consequently, the Medical Society may file its complaint with either or both of the Commissioners, and request that they investigate and prosecute under their statutory enforcement powers. But we conclude that there is no basis in the Act to infer a private right of action for the Medical Society.
Moreover, even if the Act could be construed to allow enforcement by doctors seeking the ten percent interest penalty as an adjunct to a damage claim, that would not support the Medical Society's position that it could pursue an injunctive action. See N.J.S.A. 17B:26-9.1(d)(7); N.J.A.C. 11:22-17(b). Like the CFA, the HINT Act authorizes the applicable State agency to enforce the Act. As noted earlier in this opinion, private parties may not file a CFA lawsuit solely to obtain injunctive relief, although they may, pursuant to a specific statutory provision, sue for damages. Weinberg, supra, 173 N.J. at 254, 801 A.2d 281. We perceive no reason to interpret the HINT Act differently, where that Act, unlike the CFA, does not specifically permit any private cause of action. See Lemelledo, supra, 150 N.J. at 272, 696 A.2d 546 (permitting consumers to maintain a CFA action against a lender that sold credit insurance, but recognizing that the Insurance Trade Practices Act, N.J.S.A. 17B:30-2 to -14, and other insurance statutes did not permit a private cause of action).
We also agree with the trial judge that the Society's complaint does not state a cause of action for tortious interference with prospective economic advantage. First, the tortious interference claim is based entirely on defendant's failure to pay the doctors' claims for work performed under their contracts with AmeriHealth. This is no more than a restatement of the breach of contract claim, which may only be asserted by the doctors who have contracts with AmeriHealth. Second, a tortious interference claim will not lie where the claim is directed against a defendant who is a party to the contract at issue. "Where a person interferes with the performance of his or her own contract, the liability is governed by principles of contract law." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 753, 563 A.2d 31 (1989). Moreover, the patients of the doctors in question are also *1170 parties to contracts with AmeriHealth and can assert their own contractual rights.
Finally, a tortious interference claim will not lie for interference with any relationship; it turns on interference with an economic relationship. Id. at 751, 563 A.2d 31. The economic relationship at issue here is between the doctors and AmeriHealth. The Medical Society's complaint that AmeriHealth is interfering with the doctor-patient relationship is a restatement of its Pierce argument concerning violations of public policy. However, the essential factual basis of the claim remains the failure of AmeriHealth to pay the doctors.
The trial judge also correctly concluded that the Society lacks standing to assert claims for breach of contract and breach of the duty of good faith and fair dealing. Those claims are personal to the doctors who hold the contracts with AmeriHealth; the Society is not a party to the contracts nor have the doctors assigned their contractual rights to the Society. Consequently, the Society lacks either representational or institutional standing to litigate the claims. See, Gold Mills, Inc. v. Orbit Processing Corp., 121 N.J.Super. 370, 373, 297 A.2d 203 (Law Div.1972); Crowell v. The Hosp. of St. Barnabas, 27 N.J. Eq. 650, 653 (E. & A. 1876). Such litigation would necessarily require the participation, as indispensable parties, of the individual doctors whose contractual rights would be at stake. See Crescent Park Tenants Ass'n v. Realty Equities Corp., 58 N.J. 98, 109, 275 A.2d 433 (1971); New Jersey Citizen Action v. Riviera Motel Corp., 296 N.J.Super. 402, 413, 686 A.2d 1265 (App.Div.1997), appeal dismissed, 152 N.J. 361, 704 A.2d 1297 (1998). It may be that, like a claim of a pattern and practice of discrimination, a pattern of pretextual claim denial could only be detected upon consideration of a large number of individual cases. However, the need for the court to consider individual claims precludes the Society from maintaining this lawsuit without the participation of the doctors whose claims are the subject of the lawsuit. See Hunt, supra, 432 U.S. at 343, 97 S.Ct. at 2442, (1977); Warth v. Seldin, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211-12, 45 L.Ed.2d 343 (1975).
We also note two other, related problems with the Society's lawsuit which the trial court did not address. Claims for monetary damages typically belong in the Law Division and not in General Equity, R. 4:3-1(a)(1), and claims for injunctive relief cannot normally be maintained where monetary damages are a sufficient remedy. See Crowe v. De Gioia, 90 N.J. 126, 132-33, 447 A.2d 173 (1982); Subcarrier Comm., Inc. v. Day, 299 N.J.Super. 634, 638, 691 A.2d 876 (App.Div.1997). A plaintiff may not circumvent these principles by filing an action to "enjoin" a defendant to pay money or to cease withholding payment. See Solondz v. Kornmehl, 317 N.J.Super. 16, 19-20, 721 A.2d 16 (App.Div.1998). Given that pretextual refusals to promptly pay the doctors' claims might be construed as an effort to circumvent the HINT Act, injunctive relief to enforce the Act might be an appropriate adjunct to a damage suit filed by the doctors. However, the Society cannot maintain an action solely for injunctive relief any more than its members could. See Matter of Ass'n of Trial Lawyers of Am., 228 N.J.Super. 180, 186, 549 A.2d 446 (App.Div.1988), certif. denied, 113 N.J. 660, 552 A.2d 180 (1988).
Without prejudging the merits, we do not minimize the significance of the Society's claims. If true, they describe pernicious conduct which could undermine the success of managed care in this State. Our decision, however, requires that these claims be pursued by the proper parties, *1171 asserting cognizable causes of action in the proper forum.
Affirmed.
NOTES
[1] We affirmed the trial court's decision in a separate opinion. Medical Soc. of New Jersey v. Oxford Health Plans, Inc., A-1485-03T1 (App.Div. Feb. 14, 2005).
[2] The Hunt test requires that in order to have associational standing, an association must demonstrate that its members would have standing to sue; the interests it seeks to maintain are germane to the purposes of the organization; and neither the claim asserted nor the relief requested requires individual participation in the lawsuit by the association's members. Ibid.
[3] We imply no view as to whether the patients who have contracts with AmeriHealth could file suit under the CFA in connection with the insurer's refusal to pay claims.