42 A.3d 901 (2012)
425 N.J. Super. 615
NORTH HALEDON FIRE COMPANY NO. 1, John Bleeker and Daniel Stevenson, Plaintiffs-Respondents/Cross-Appellants,
v.
BOROUGH OF NORTH HALEDON, Defendant-Appellant, and
Lincoln National Corporation d/b/a Lincoln Financial Group, Defendant/Cross-Respondent.
Docket No. A-2918-10T4
Superior Court of New Jersey, Appellate Division.
Argued February 7, 2012.
Decided May 16, 2012.
*903 Michael P. De Marco argued the cause for appellant Borough of North Haledon (De Marco and De Marco, attorneys; Mr. De Marco, on the brief).
John J. Segreto, Haledon, argued the cause for respondents/cross-appellants North Haledon Fire Company No. 1, John Bleeker and Daniel Stevenson (Segreto, Segreto & Segreto, attorneys; Mr. Segreto, of counsel and on the brief).
David J. Bloch, Livingston, argued the cause for cross-respondent Lincoln National Corporation d/b/a Lincoln Financial Group (L'Abbate, Balkan, Colavita & Contini, L.L.P., attorneys; Mr. Bloch, on the brief).
Before Judges MESSANO, YANNOTTI and KENNEDY.
The opinion of the court was delivered by
*904 YANNOTTI, J.A.D.
Defendant Borough of North Haledon (Borough) appeals from a judgment entered by the trial court on November 12, 2010, which required the Borough to return to plaintiffs John Bleeker (Bleeker) and Daniel Stevenson (Stevenson), monies withdrawn from their individual Length of Service Award Program (LOSAP) accounts. The Borough also appeals from an amended judgment entered by the court on January 7, 2011, which extended the relief granted to Bleeker and Stevenson to all members of the Borough's Fire Department. Plaintiffs cross-appeal from the trial court's order of August 14, 2009, granting summary judgment to defendant Lincoln Financial Corp. d/b/a Lincoln Financial Group (Lincoln).
For the reasons that follow, we affirm in part and reverse in part on the appeal, and affirm on the cross-appeal. We remand the matter for entry of an amended judgment limiting the relief granted to plaintiffs Fire Company No. 1, Bleeker and Stevenson.

I.
This appeal arises from the following facts. The Emergency Services Volunteer Length of Service Award Program Act (the LOSAP Act), N.J.S.A. 40A:14-183 to -193, was enacted into law in 1997 and became effective on January 19, 1998. L. 1997, c. 388, § 1. The LOSAP Act authorizes a county or municipality in which a fire district does not exist to establish by ordinance a LOSAP for active volunteer members of the emergency service organizations operating under the county's or municipality's jurisdiction. N.J.S.A. 40A:14-185(a).
The LOSAP Act provides that every ordinance or resolution creating a LOSAP shall include:
(1) A general description of the program;
(2) A statement of the proposed estimated total amount to be budgeted for the program;
(3) A statement of the proposed maximum annual contribution for an active volunteer member;
(4) If the proposed program authorizes the crediting of prior year service, a statement of the number of prior years of service available for crediting for each active volunteer member; and
(5) Any such other provisions as may be reasonably required by the [Director of the Division of Local Government Services in the Department of Community Affairs] to carry out the purposes of this act.
[N.J.S.A. 40A:14-185(d).]
An ordinance or resolution establishing a LOSAP may not take effect until presented as a public question at a general election and ratified by the voters. N.J.S.A. 40A:14-185(c).
On August 15, 2001, the Borough adopted Ordinance No. 12-2001 establishing a LOSAP for the active members of the Borough's volunteer fire department. The ordinance provides for the payment of annual contributions to a deferred income account for each active volunteer member of the fire department that meets certain criteria. The maximum annual contribution is $1,150. The Borough submitted the ordinance to the voters at the general election on November 6, 2001. The voters ratified the ordinance, and it became effective on January 1, 2002.
According to the ordinance, members of the volunteer fire department had to earn at least sixty points in each qualifying year in order to qualify for a LOSAP contribution. Points are earned for fire department responses, training, holding a *905 specified elected position, drills and other activities, and length of service.
The ordinance indicates that a maximum of sixty points and a minimum of thirty points could be earned for fire department responses, based on the following schedule:

 45% or more attendance60 points
 35% to 44% attendance50 points
 25% to 34% attendance40 points
 20% to 24% attendance30 points
 less than 20% attendance0 points

The ordinance also indicates that a member could earn from between ten and fifty points for training; between two and forty points for holding certain elected positions; between five and fifteen points for drills and other activities; and between one and ten points for length of service.
According to the ordinance, the amount of the annual contribution is based on the number of points earned:

100 Points 100% contribution
90 to 99 Point 80% Contribution
80 to 89 Points 60% Contribution
70 to 79 Points 40% Contribution
60 to 69 Points 20% Contribution
Under 59 Points 0% Contribution

The Borough entered into a contract with Lincoln to administer the accounts into which the LOSAP contributions were deposited. The Borough made LOSAP contributions for Bleeker in 2002, 2003, 2004, 2005, and 2006. It made contributions for Stevenson in 2002, 2003, and 2004. The contributions were deposited into individual accounts at Lincoln.
In 2008, the Borough audited its LOSAP. On September 2, 2008, the Borough Attorney advised Fire Company No. 1 and Fire Company No. 2 that the audit revealed that overpayments were made in the program. Several months later, the Borough informed Bleeker and Stevenson, as well as other members of the volunteer fire department, that certain LOSAP contributions had been deposited erroneously on their behalf because they failed to obtain a minimum of thirty points in the category of fire department responses for the years in which those contributions were made.
According to the Borough's audit, the Borough overpaid about $21,000 in contributions for members of Fire Company No. 1 and $7,000 for members of Fire Company No. 2. The audit also showed that additional contributions of about $9,000 were required for members of Fire Company No. 1, and about $44,000 for members of Fire Company No. 2. The Borough put all contributions on hold for 2007, and made no contributions for 2008 and 2009.
On February 11, 2009, plaintiffs' attorney advised Lincoln that plaintiffs did not agree that the Borough had erroneously contributed to their accounts, and said that members participating in the program would file suit against Lincoln if it withdrew monies from their accounts. The following day, the Borough's attorney directed Lincoln to withdraw the monies the Borough claimed were erroneously paid.
On February 18, 2009, the Borough adopted Resolution No. 61-2009, which required the withdrawal of all LOSAP contributions made in contravention of the LOSAP ordinance. Plaintiffs maintained that the contributions had been properly made. On March 24, 2009, funds were withdrawn from the accounts of certain members, including $2,760 from Bleeker's account and $1,610 from Stevenson's account.
Thereafter, Fire Company No. 1, Bleeker and Stevenson filed a complaint in the Law Division against the Borough and Lincoln, alleging that they had misinterpreted the LOSAP ordinance. They sought a declaratory judgment requiring the repayment of all monies improperly *906 withdrawn from the members' LOSAP accounts. Plaintiffs also asserted claims against Lincoln for breach of contract and conversion.
The Borough thereafter filed a motion seeking dismissal of the claims asserted by Fire Company No. 1 for lack of standing. Lincoln also filed a motion for summary judgment. The trial court considered the motions on August 14, 2009, and entered orders on that date granting the motions. The parties subsequently submitted Bleeker's and Stevenson's claims for trial on stipulated facts.
The court filed an opinion dated September 23, 2010, in which it concluded that the Borough erred by ordering the withdrawal of monies from Bleeker's and Stevenson's LOSAP accounts. The court said that the Borough's ordinance did not specifically require members of the volunteer fire department to earn a minimum of thirty points in the category of fire department responses in order to qualify for an annual LOSAP contribution.
According to the court, the ordinance indicated that a member qualified for an annual LOSAP contribution if he earned at least sixty points on the Borough's point schedule. The court added that, in other years, the Borough made LOSAP contributions for members who had not earned thirty points in fire department responses. The court said that this past practice supported its interpretation of the ordinance.
The court entered a judgment dated November 12, 2010, requiring the Borough to return to Bleeker's and Stevenson's LOSAP accounts the amounts withdrawn pursuant to Resolution No. 61-2009, specifically $2,760 for Bleeker and $1,610 for Stevenson.
Plaintiffs thereafter sought reconsideration of the orders of August 14, 2009, dismissing the claims of Fire Company No. 1 and granting summary judgment to Lincoln. The court entered an order dated January 7, 2011, granting the motion for reinstatement of the claims of Fire Company No. 1, and denying the motion for reinstatement of the claims against Lincoln.
The court also entered an amended judgment dated January 7, 2011 which: (1) declared Resolution No. 61-2009 invalid to the extent it erroneously relied upon a requirement that members earn a minimum of thirty points for fire department responses for a LOSAP payment; (2) ordered the Borough to return to Lincoln the LOSAP funds that were incorrectly withdrawn from the individual accounts of all members of the fire department and direct Lincoln to deposit the funds in the accounts of those members; and (3) ordered the Borough to pay all LOSAP benefits due to members of the fire department for the years 2008 and 2009 in accordance with the court's interpretation of the Borough's LOSAP ordinance. On January 21, 2011, the court stayed its judgment pending appeal.

II.
The Borough argues that the trial court erred by invalidating Resolution No. 61-2009 because the LOSAP Act and the Borough's ordinance conditioned eligibility for LOSAP contributions upon earning thirty points for attendance at fire department responses. We do not agree.
As we have explained, N.J.S.A. 40A:14-185(a) authorizes a municipality to establish a LOSAP for active voluntary members of emergency service organizations operating under its jurisdiction. According to N.J.S.A. 40A:14-188(a), a person is eligible to participate in a LOSAP upon commencement of the "performance of active emergency services in any emergency service organization[.]"
*907 Furthermore, N.J.S.A. 40A:14-188(b) states that, under a LOSAP, "a year of active emergency service commencing after the establishment of the program shall be credited for each calendar year in which an active volunteer member accumulates a number of points that are granted in accordance with a schedule adopted by the sponsoring agency." The LOSAP must provide "that points shall be granted for activities designated by the sponsoring agency[.]" Ibid. The "activities" include "[p]articipation in emergency responses[.]" N.J.S.A. 40A:14-188(b)(7).
The LOSAP Act does not, however, require members to earn a specified number of points in any particular activity as a condition for a LOSAP contribution. N.J.S.A. 40A:14-184 defines "[y]ear of active emergency service" to mean "a [twelve]-month period during which an active volunteer member participates in the fire or first aid service and satisfies the minimum requirements of participation established by the sponsoring agency on a consistent and uniform basis." The LOSAP Act does not define "fire or first aid service" to require members to respond to emergencies.
Furthermore, a member of a volunteer fire company could be eligible for a LOSAP contribution if the member earns the required points for other activities related to a "fire service," including training courses, drills, sleep-in or standby duty, and "miscellaneous activities including participation in ... non-emergency fire, first aid or rescue activities...." N.J.S.A. 40A:14-188(b)(1),(2),(3), and (8). Thus, N.J.S.A. 40A:14-188 leaves to the sponsoring agency the discretion to determine the number of points required to qualify for LOSAP participation as well as the activities for which the points.
A sponsoring agency may, if it chooses, require that members of a volunteer fire company earn a designated number of points for responding to fires, but as the trial court determined here, the Borough's ordinance did not establish such a requirement. As we noted previously, the Borough ordinance states that a volunteer qualifies for a LOSAP contribution if the volunteer accumulates sixty points for designated activities in the calendar year. The ordinance does not require the member to earn a minimum number of points in any category.
Among other things, the ordinance provides that a member of the volunteer fire department would not earn any points for fire department responses unless the member attends at least twenty percent of the department's responses. The ordinance does not state, however, that a member would not be entitled to a LOSAP contribution unless he earns thirty points for fire department responses in a particular year.
The Borough argues that the trial court erred by relying upon the fact that it previously made LOSAP contributions to members who had not accumulated a minimum of thirty points in the category of fire department responses. The Borough argues that, in doing so, the court erroneously applied the doctrine of equitable estoppel.
We disagree. The trial court did not apply equitable estoppel. It merely noted that the Borough's past practices supported the court's interpretation of the ordinance because those past practices indicated that the Borough never intended to require members to accumulate thirty points in fire department responses as a condition for payment of the annual LOSAP contribution.
We conclude that the trial court correctly determined that neither the LOSAP Act nor the Borough's ordinance required *908 members of the volunteer fire department to earn thirty points for fire department responses in order to qualify for the annual LOSAP contribution. While the Act allows a municipality to impose such a requirement, the Borough did not do so in its LOSAP ordinance.

III.
Next, the Borough argues that the trial court erred by reinstating the claims of Fire Company No. 1. The Borough argues that Fire Company No. 1 does not have standing to assert claims on behalf of its members. Again, we disagree.
An association may have standing to seek judicial relief in its own right or on behalf of its members. In Re Association of Trial Lawyers of Am., 228 N.J.Super. 180, 186, 549 A.2d 446 (App. Div.1988). To establish that it has standing, "an association must demonstrate that its members would have standing to sue; the interests its seeks to maintain are germane to the purposes of the organization; and neither the claim asserted nor the relief requested requires individual participation by the association's members." Medical Soc'y of New Jersey v. AmeriHealth HMO, Inc., 376 N.J.Super. 48, 55 n. 2, 868 A.2d 1162 (App.Div.2005) (citing Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 343, 97 S.Ct. 2434, 2442, 53 L.Ed.2d 383, 394 (1977)).
Members of Fire Company No. 1 would have standing to maintain an action against the Borough for the wrongful withdrawal of the LOSAP contributions from their individual accounts. Moreover, the interests involved are germane to the purposes of the organization because payment of LOSAP contributions in accordance with the Borough's ordinance affects the organization's ability to attract and retain volunteers. This is essential to achievement of the fire company's objectives which, as stated in its bylaws, include the "[p]reservation of life, limb and property" from fires and other emergencies. Furthermore, the relief sought by Fire Company No. 1 in this litigation did not require participation by the individual members.
We therefore conclude that the trial court did not err by reinstating the claims of Fire Company No. 1.

IV.
The Borough additionally argues that the trial court erred by applying its judgment to other members of the Borough's Fire Department because they were not parties to this litigation. We agree with the Borough's contention.
"Judgment or orders normally do not bind non-parties." In Re Application of Mallon, 232 N.J.Super. 249, 254 n. 2, 556 A.2d 1271 (App.Div.1989) (citing State v. Redinger, 64 N.J. 41, 46, 312 A.2d 129 (1973) and Biddle v. Biddle, 166 N.J.Super. 1, 7, 398 A.2d 1297 (App.Div.1979)). A judgment may, however, be binding upon non-parties in other matters if their interests have been represented by a party. Morris County Fair Housing Council v. Boonton Township, 197 N.J.Super. 359, 364-65, 484 A.2d 1302 (Law Div.1984) (citing Restatement (Second) of Judgments § 34(3) (1982)). Such matters include traditional class actions, suits in which a public officer or agency is authorized by law to represent the public, and actions brought by a taxpayer on behalf of residents, citizens and other taxpayers. Ibid. This action does not come within any of these exceptions.
We note that, in other contexts, a non-party may be bound by a judgment when the non-party "is so far represented by others that his interest received actual and efficient protection[.]" Id. at 365, 484 *909 A.2d 1302 (quoting Rynsburger v. Dairymen's Fertilizer Coop., Inc., 266 Cal. App.2d 269, 278, 72 Cal.Rptr. 102, 107 (1968)). Here, an action was commenced by Fire Company No. 1, Bleeker and Stevenson. At no point did they express any interest in pursuing claims on behalf of any other members of the Borough's fire department. Moreover, no other members sought to participate in this case. Under the circumstances, we are convinced that the trial court erred by extending relief to all members of the fire department.

V.
We turn to plaintiffs' cross-appeal. Plaintiffs contend that the court erred by granting summary judgment to Lincoln. Again, we disagree.
The contract that Lincoln allegedly breached is the Borough's LOSAP plan document, which governs the administration of the program. The signatories to this agreement are not identified on the document; however, the agreement appears to be a contract between the Borough and Lincoln. We will assume for purposes of our decision that plaintiffs were intended beneficiaries under the agreement and can pursue contract-based-claims against Lincoln as third-party beneficiaries.
Among other things, the contract provides for the LOSAP plan to be:
administered by the local plan administrator who shall represent the sponsoring agency in all matters concerning the administration of this plan. The local plan administrator shall have full responsibility for all functions of the program, including, but not limited to, enrollment, contributions, investments, accounting, reporting and distribution of awards, and shall make all day to day decisions related hereto.
In addition, the contract defines the term "local plan administrator" as "the person or group of local public officials or employees, including the local governing body, appointed by the governing body of the local unit or fire district...." The contract states that a "local plan administrator is authorized to determine any matters concerning the rights of any participant under this plan and such determination shall be binding on the participant and any beneficiary thereof." The contract additionally states that a private contractor may administer all or part of the LOSAP and may invest program funds.
It is clear, therefore, that all responsibilities and decisions for the payment, administration and maintenance of LOSAP funds rest with the "local plan administrator," not Lincoln, which is the private contractor retained to assist in the administration of the program. Under the LOSAP plan document, Lincoln is required to carry out the instructions of the "local plan administrator" and the Borough, as sponsoring agency for the LOSAP program.
As the trial court determined, Lincoln merely served in this administrative capacity. Lincoln did not breach the contract when it carried out the Borough's direction to withdraw the LOSAP contributions from the members' accounts. Therefore, the court correctly concluded that Lincoln was entitled to summary judgment on plaintiffs' breach of contract claim.
The court also correctly concluded that Lincoln was entitled to summary judgment on plaintiffs' conversion claim. "`Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.'" Chicago Title Ins. Co. v. Ellis, 409 N.J.Super. 444, 454, 978 *910 A.2d 281 (App.Div.2009) (quoting Restatement (Second) of Torts § 222A(1) (1965)).
Conversion has been defined as the "`unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'" Barco Auto Leasing Corp. v. Holt, 228 N.J.Super. 77, 83, 548 A.2d 1161 (App.Div.1988) (quoting McGlynn v. Schultz, 90 N.J.Super. 505, 526, 218 A.2d 408 (Ch.Div.1966), certif. denied, 50 N.J. 409, 235 A.2d 901 (1967)). Although conversion claims normally involve chattel, money may be the subject of conversion claims as well. Chicago Title Ins. Co., supra, 409 N.J.Super. at 454-55, 978 A.2d 281 (internal citations omitted).
Here, Lincoln's involvement was limited to withdrawing the LOSAP contributions and returning the funds to the Borough. It is undisputed that Lincoln acted at the direction of the Borough, as required by the contract. Because Lincoln did not exercise any independent dominion or control over plaintiffs' monies, its actions do not constitute conversion.
Furthermore, to the extent plaintiffs claim that Lincoln is liable to them for a breach of a fiduciary duty, their claim is without merit. We note that plaintiffs' complaint did not include such a claim and there is no reference to such a claim in the record before us. An issue not raised below will not be considered for the first time on appeal. Brock v. Pub. Serv. Elec. & Gas Co., 149 N.J. 378, 391, 693 A.2d 894 (1997); Soc'y Hill Condo. Ass'n v. Soc'y Hill Assocs., 347 N.J.Super. 163, 177-78, 789 A.2d 138 (App.Div.2002).
In addition, any claim that Lincoln breached a fiduciary duty owed to plaintiffs is without merit because Lincoln merely carried out the tasks delegated to it in the LOSAP plan document. In doing so, Lincoln did not breach any fiduciary duty to plaintiffs.
Affirmed in part, reversed in part, on the appeal; and affirmed on the cross-appeal. The matter is remanded to the trial court for entry of an amended judgment limiting the relief granted to Fire Company No. 1, Bleeker and Stevenson.