840 A.2d 262 (2004)
366 N.J. Super. 1
VARANO, DAMIAN & FINKEL, L.L.C., and Ramsey Medical, P.A., a/s/o Jerome Maak, Plaintiffs-Respondents,
v.
ALLSTATE INSURANCE COMPANY, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted December 9, 2003.
Decided January 6, 2004.
Pringle Quinn Anzano, attorneys for appellant (Thomas Hall, of counsel and on the brief).
Law Offices of Steven A. Varano, P.C., Totowa, attorneys for respondents (Gary D. Tomasella, on the brief).
*263 Before Judges CIANCIA, ALLEY and COLEMAN.
The opinion of the court was delivered by
CIANCIA, J.A.D.
Defendant Allstate Insurance Company (Allstate) appeals a summary judgment enforcing a prior settlement that Allstate entered into with plaintiff Ramsey Medical, P.A. (Ramsey Medical) for the payment of medical bills incurred by Allstate's insured, Jerome Maak. The final order directed Allstate to pay $10,000 "for outstanding medical bills pursuant to PIP" and also to pay $1,425 in legal fees to plaintiffs Varano, Damian & Finkel, L.L.C. (Varano). We now reverse the summary judgment and remand for further proceedings.
Allstate's insured, Maak, sustained personal injuries in a 1996 auto accident and sought treatment from Ramsey Medical. In turn, Ramsey Medical sought payment from Allstate under Maak's Personal Injury Protection (PIP) coverage. Allstate paid some claims but not others. Ramsey Medical sought arbitration through its counsel, the Varano firm, but a settlement was reached before arbitration was concluded. The settlement provided for payment of $10,000 to Ramsey Medical and $1,425 to Varano in fees and costs.
In October 2000 plaintiffs filed a complaint to enforce the settlement. Allstate answered and attempted, without success, to depose Dr. George Najemian, a chiropractor who purportedly owned Ramsey Medical. An order was signed compelling the deposition, but it never took place. Plaintiffs filed what was essentially a motion for summary judgment shortly before the scheduled trial date. Allstate opposed the motion and cross-moved for judgment based on the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1 to -30 or, alternatively, for the right to reserve claims under that Act against Ramsey Medical, Najemian, and other corporations under Najemian's control, specifically with respect to treatment of twenty-four Allstate insureds other than Maak. We note, as to this latter request, the trial court signed a second order granting Allstate the right to pursue the reserved claims under the Insurance Fraud Prevention Act.
Allstate's reasons for not complying with the settlement agreement center around its alleged lack of knowledge that Ramsey Medical and Najemian were in violation of laws and regulations that precluded payment to them of medical claims. Allstate's position is essentially that it was defrauded by Ramsey Medical.
Allstate alleges that Ramsey Medical was incorporated in 1996 with Najemian listed as its registered agent and a Dr. Robban Sica, M.D. as the sole director. A 1999 annual report showed Najemian as both the registered agent and the sole officer/director. Sica was not mentioned. The same day that Ramsey Medical was incorporated, Tangn Management Corporation (Tangn) was also incorporated with the same address as Ramsey Medical and with Najemian as the registered agent and sole director. In this regard, we note plaintiffs' certification of counsel which accompanied their motion for summary judgment and stated, in part:
Dr. George P. Najemian, II is a chiropractor licensed in the State of New Jersey. At the time the services were performed, Dr. Najemian was the sole owner and director of Tangn Management Corp .... [which] provided management services to Ramsey Medical, P.A., owned and under the directorship of Robban A. Sica, M.D....
*264 In 1996 an osteopath, Dr. Morris Mintz, was hired by Ramsey Medical. His certification states that he was hired and supervised by Najemian. He never met or spoke to Sica. Mintz was employed at Ramsey Medical for about two-and-a-half years before he was fired.
Shortly after Mintz was fired, Dr. Rekha Daftary, M.D. was hired at Ramsey Medical. Her certification states that she, too, was hired and supervised by Najemian and considered him her employer. She never met or spoke to Sica. Daftary treated Maak until her resignation in February 1999. Ramsey Medical assertedly made six claims for payment alleging treatment of Maak by Daftary on twelve occasions after February 1999. Daftary certified that she did not treat Maak on those twelve occasions.
Allstate alleges that Ramsey Medical's corporate structure was intended to mislead Allstate into believing it was owned, operated, and controlled by a plenary licensed physiciani.e., Sica. The New Jersey Board of Medical Examiners has promulgated regulations regarding the structure of a professional practice. N.J.A.C. 13:35-6.16. Of particular relevance here is N.J.A.C. 13:35-6.16(f)3i, which in essence prohibits a physician with a plenary license, such as an M.D. or a D.O., from being employed by a practitioner with a limited license, such as a chiropractor (D.C.) or podiatrist (D.P.M.). The regulation states:
Thus, a practitioner with a plenary license shall not be employed by a practitioner with a limited scope of license, nor shall a practitioner with a limited license be employed by a practitioner with a more limited form of limited license. By way of example, a physician with a plenary license may be employed by another plenary licensed physician, but an M.D. or D.O. may not be employed by a podiatrist (D.P.M.) or chiropractor (D.C.)....
Exactly how or when defendant learned of Sica's role in Ramsey Medical is unclear. Plaintiffs' certification in support of its motion for summary judgment does, however, address the issue as previously noted. That certification also states, "[t]here is no evidence that Dr. Najemian employed any medical doctors to work for him, as he was not the owner of Ramsey Medical, P.A. at the time the services were performed. N.J.A.C. 13:35-6.16(f)(3) is inapplicable in this case."
The regulation of the Board of Medical Examiners was violated if Allstate's position is credited. Sica, according to Allstate, was used improperly so that it appeared that the regulation was being complied with. Sica allegedly lives in Connecticut and has done nothing more than lend her name and license to Ramsey Medical. We note that claims of this nature have previously been successfully advanced by Allstate against Sica in relation to five other medical corporations that Sica claimed to own in whole or in part. See Allstate Ins. Co. v. Schick, 328 N.J.Super. 611, 746 A.2d 546 (Law Div. 1999).[1]
*265 We have previously held that "any healthcare service authorized by the [Automobile Reparation Reform Act], in order to be eligible for recognition, must also comply with any other significant qualifying requirements of law that bear upon rendition of the service." Allstate Ins. Co. v. Orthopedic Evaluations, Inc., 300 N.J.Super. 510, 516, 693 A.2d 500 (App. Div.), cert. granted and cause remanded, 151 N.J. 67, 697 A.2d 541 (1997).[2] We there added that "[t]he law should accord no recognition to such entities and operations which place the public at risk by failing to provide the professional supervision and control deemed essential by the Board [of Medical Examiners]." Id. at 517, 693 A.2d 500; accord Material Damage Adjustment Corp. v. Open MRI of Fairview, 352 N.J.Super. 216, 799 A.2d 731 (Law Div.2002) (holding that medical provider was not entitled to PIP payments for services provided during period of unlicensed operation).
Allstate's legal position, assuming the validity of its alleged facts, is sound. A provider in violation of N.J.A.C. 13:35-6.16 is not eligible to receive PIP benefits. Also, it should go without saying that claims for services that were not actually rendered are fraudulent, absent an innocent explanation.
The trial judge here did not dispute these propositions, although he did not address them in any length. He noted that a settlement was a contract. He believed Allstate was "estopped" from raising the issues belatedly. The trial judge said:
During the course of the arbitration [Ramsey Medical's] counsel, presumably, was in contact with the defendant's claims adjuster and a settlement was agreed upon and accepted by the plaintiff. At no time from 1996 to 2001 when the present Answer was filed was there any mention of wrong-doing by Ramsey Medical and Dr. Najemian.
At all times prior to the settlement, the defendant, Allstate, had at its disposal claim adjusters and investigators all of whom were quite capable of investigating the background of the medical group which it now contends is illegal and chose to do nothing until five years after the fact.
Accordingly, the trial court could not find clear and convincing proof that the settlement should be vacated. We take a somewhat different view.
The short answer to the court's utilization of the equitable doctrine of estoppel is that "[e]stoppel cannot be interposed to protect an active wrongdoer." Gould & Eberhardt v. City of Newark, 6 N.J. 240, 244, 78 A.2d 77 (1951) (citing N.J. Nat'l Bank & Trust Co. v. Berkshire, 9 N.J. Misc. 933, 156 A. 40 (Ch.1931)); Erlich v. First Nat'l Bank of Princeton, 208 N.J.Super. 264, 303-304, 505 A.2d 220 (Law Div.1984). Beyond that, Allstate's adjuster Joseph Poturaj certified that at the time he approved the settlement he *266 had no knowledge of Ramsey Medical's corporate structure. He relied upon documents submitted by Ramsey Medical. Had he been aware of the true facts he would not have authorized settlement "under any circumstances." This factual assertion stands unrebutted for purposes of plaintiffs' summary judgment motion. Although plaintiffs vigorously contend that Allstate as an entity was well aware of Ramsey Medical's corporate structure before settlement was entered, the specific knowledge of Allstate's claims adjuster, Poturaj, is certainly in dispute. The record does not reveal why Allstate did not act sooner. Perhaps it should have, but the consequences of the delay should not have been so severe. It is apparent from even a cursory review of Allstate's allegations and the relevant case law that plaintiffs' conduct, as portrayed by Allstate, constituted a serious breach of law and policy. That policy is reflected in the Insurance Fraud Prevention Act, in the regulations of the Board of Medical Examiners, and in the resources devoted by the Attorney General and others in combating insurance fraud. There is a strong public policy in this State to root out insurance fraud. When a party such as Allstate alleges such fraud in the credible manner that is reflected in the present record, that should not be rebuffed because it was raised belatedly. Allstate certainly has more than enough incentive to investigate possible insurance fraud in the most expeditious manner. It does not need to be taught a lesson so that future claims are timely. There are a variety of lesser sanctions for dilatory practices short of summary judgment. As the trial judge noted, a settlement is a contract. However, a contract entered into by an entity not legally entitled to its benefits, a contract which, in part, provides payment for services not actually rendered, should not be enforced by our courts. This is particularly so when the contract is imbued with a public interest, such as the need to prevent insurance fraud and to enforce regulations designed to protect the public health.
Summary judgment in favor of plaintiffs is vacated. We decline to exercise original jurisdiction and enter summary judgment in favor of Allstate under the Insurance Fraud Prevention Act. There are issues of material fact that preclude summary judgment in favor of plaintiffs and a more complete record needs to be developed before either party obtains judgment.
Reversed.
NOTES
[1] The Schick opinion was written by Judge Villanueva and is one of several decisions authored by him in this area. See Selective Ins. Co. of Am. v. Med. Alliances, LLC, 362 N.J.Super. 392, 827 A.2d 1188 (Law Div.2003) (holding that insurance company was entitled to discovery to determine the ownership of medical providers doing business as LLC's before making payment of PIP benefits); Liberty Mut. Ins. Co. v. Open MRI of Morris & Essex, L.P., 356 N.J.Super. 567, 813 A.2d 621 (Law Div.2002) (vacating an arbitration award of PIP benefits to an unlicensed medical facility); Liberty Mut. Ins. Co. v. Hyman, 334 N.J.Super. 400, 759 A.2d 894 (Law Div. 2000) (holding that chiropractic facility was not entitled to payment of PIP benefits when it was illegally incorporated as a general business corporation); Prudential Prop. and Cas. Ins. Co. of New Jersey v. Nardone, 332 N.J.Super. 126, 752 A.2d 859 (Law Div.2000) (dismissing AAA complaints and PIP claims with prejudice after chiropractor and providers failed to provide discovery, thereby breaching the cooperation clause of the automobile insurance policy); Prudential Prop. & Cas. Ins. Co. v. Midlantic Motion X-Ray, Inc., 325 N.J.Super. 54, 737 A.2d 711 (Law Div.1999) (holding that provider of diagnostic X-ray testing services was ineligible for PIP benefits because the facility was owned, controlled, and supervised by a chiropractor rather than a plenary licensed physician).
[2] The initial Appellate Division opinion was supplemented on remand but otherwise unchanged. Allstate Ins. Co. v. Orthopedic Evaluations, Inc., 304 N.J.Super. 278, 700 A.2d 372 (App.Div.1997).