860 A.2d 1013 (2004)
373 N.J. Super. 172
ISLAND MORTGAGES OF NEW JERSEY and Perennial Lawn Care, Inc., on behalf of themselves and all others similarly situated, Plaintiffs,
v.
3M (MINNESOTA MINING AND MANUFACTURING COMPANY), Defendant.
Superior Court of New Jersey, Law Division, Passaic County.
June 30, 2004.
*1014 Daniel R. Lapinski (Squitieri & Fearon) and Timothy A. Scott, of the Illinois Bar, admitted pro hac vice, Chicago, IL, for plaintiff Island Mortgage of New Jersey.
David M. Meisels, Newark, for defendant (Herrick, Feinstein, attorneys).
MINIMAN, J.S.C.
The matter before the court involves a class action lawsuit initiated against defendant, Minnesota Mining and Manufacturing Company ("3M"), by plaintiffs, Island Mortgages of New Jersey and Perennial Lawn Care, Inc., and other companies that purchased 3M-brand Scotch tape ("plaintiffs"). Plaintiffs allege that defendant's conduct constitutes unconscionable commercial *1015 practice and a violation of the Consumer Fraud Act. Defendant now moves to dismiss plaintiffs' complaint for failure to state a claim pursuant to R. 4:6-2.
Motions to dismiss a plaintiff's complaint should be "approach[ed] with great caution" and should only be granted in "the rarest of instances." Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 771-72, 563 A.2d 31, 48 (1989). Despite this caveat, a court must dismiss a plaintiff's complaint if it has failed to articulate a legal basis entitling plaintiff to relief. Camden County Energy Recovery Assoc., L.P. v. New Jersey Dep't of Envtl. Prot., 320 N.J.Super. 59, 64, 726 A.2d 968, 970 (App.Div.1999). On a motion to dismiss, the plaintiff's obligation is "not to prove the case but only to make allegations, which, if proven, would constitute a valid cause of action." Leon v. Rite Aid Corp., 340 N.J.Super. 462, 472, 774 A.2d 674, 680 (App.Div.2001). This court must determine whether plaintiffs have pled a viable cause of action under the Consumer Fraud Act.
The complaint alleges that plaintiffs represent a class of persons "who purchased invisible and transparent tape (collectively "transparent tape") products for home and office use in New Jersey during the period commencing four years prior to the filing of the Complaint through the date of the Complaint (the `Class Period')." Paragraph 3 of the complaint states:
To increase its profits and protect its powerful and extremely profitable position, 3M engaged in a course of unconscionable conduct aimed at restricting the access of plaintiffs and the class to lower-priced transparent tape offered by 3M competitors, such as LePage's Inc. ("Lepage's"). 3M's tactics prevented competitors from gaining or maintaining large volume sales by stifling growth of private label tape and by coordinating efforts aimed at large distributors to keep retail prices for Scotch tape high.
Plaintiffs allege that rival companies, such as Lepage's, only had a limited market share but still presented a threat to 3M's market dominance.
Paragraph 6 of plaintiff's complaint alleges:
3M's strategy was to tie retailers up in exclusive dealing arrangements which prohibited or, at the very least inhibited, retailers from purchasing private label Scotch tape. 3M offered retailers large lump-sum cash payments, promotional allowances and other cash incentives to encourage them to enter into exclusive dealing arrangements with 3M. 3M also lured retailers with a "bundled" rebate structure that rewarded retailers for refusing to carry private label Scotch tape. The effect of such arrangements was to prevent retailers from offering lower cost private label Scotch tape to plaintiffs and the class.
Plaintiffs allege that defendant's bundled rebates, exclusive dealing, and coercive activity "have caused significant harm to class members by increasing the price they have paid for transparent tape above competitive levels and/or by denying them a free choice in a competitive market, as well as the benefits of innovation."
The purpose of the Consumer Fraud Act is to "prevent deception, fraud, or falsity, whether by acts of commission or omission." Fenwick v. Kay American Jeep, Inc., 72 N.J. 372, 376, 371 A.2d 13, 15 (1977). The act specifically provides that
The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that the others rely upon *1016 such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise ... is declared to be an unlawful practice.
[N.J.S.A. 56:8-2]
Consistent with its expansive language, the Consumer Fraud Act must be "applied broadly in order to accomplish its remedial purpose, namely to root out consumer fraud." Lemelledo v. Beneficial Mgmt. Corp. of America, 150 N.J. 255, 264, 696 A.2d 546, 551 (1997).
Plaintiffs allege that defendant's coercive activities constitute unconscionable commercial practices. There is no allegation in the complaint that defendant has used deception, fraud or misrepresentations or has concealed material facts regarding the sale of its Scotch tape to plaintiff consumers. There is no allegation that suggests that defendant had any direct contact with any consumer in plaintiffs' class. Plaintiffs' sole legal theory is that defendant's alleged monopolistic conduct is, in itself, an unconscionable commercial practice as contemplated by the Consumer Fraud Act.
New Jersey courts have consistently held that the heart of an unconscionable commercial practice is the "capacity to mislead." Fenwick, supra, 72 N.J. at 378, 371 A.2d 13; New Jersey Citizen Action v. Schering-Plough Corporation, 367 N.J.Super. 8, 13, 842 A.2d 174 (App.Div.), certif. denied, 178 N.J. 249, 837 A.2d 1092 (2003). Leon, supra, 340 N.J.Super. at 470, 774 A.2d 674; In Leon, supra, 340 N.J.Super. at 471-72, 774 A.2d 674 the court found that defendant drug store's use of a tiered pricing system whereby it charged more to certain customers while advertising its products as having the "best and lowest price" had the capacity to mislead customers. The court noted several times that defendant's pricing policies were relevant only in comparison with their advertisements and that the juxtaposition of the policy and the advertisement constituted a violation of the Consumer Fraud Act. Ibid. Likewise in Fenwick, supra, 72 N.J. at 378, 371 A.2d 13 the Court found that the failure of a used car dealership to disclose the mileage of a vehicle in its advertisement could mislead a potential purchaser into believing that the vehicle had only been driven for an average number of miles when it could have been driven a far greater number of miles. The court finds the holdings in Fenwick; Leon, and New Jersey Citizen Action to be controlling. Plaintiffs have failed to set forth any factual allegation that would satisfy the requirement that a claim for unconscionable commercial practices demonstrate "a capacity to mislead." Even if plaintiffs' factual allegations were true, they have failed to demonstrate a valid cause of action.
The court also finds that even if plaintiffs had alleged a viable claim under the Consumer Fraud Act, plaintiffs lack standing to pursue their claim. Despite the wide reach of the Consumer Fraud Act, the New Jersey Supreme Court has held that in certain cases the Act is inapplicable. In Daaleman v. Elizabethtown Gas Co., 77 N.J. 267, 271-73, 390 A.2d 566, 568-70 (1978), the Supreme Court held that a private utility could not be held liable under the Consumer Fraud Act for fraudulently raising rates. The Court ruled that the pervasive control that the Public Utilities Commission exercised over the industry barred application of the Consumer Fraud Act. The Court articulated its concern regarding the "real possibility of conflicting determinations, rulings and regulations affecting the identical subject matter." Id. at 272, 390 A.2d at 569.
The standard set by the Court in Daaleman does not rest on how many agencies or separate statutes govern the same practice. A "court must look to whether a `real *1017 possibility' of conflict would exist if the CFA were to apply to a particular practice." Lemelledo, supra, 150 N.J. at 269, 696 A.2d at 553. Applying the Daaleman analysis to the present matter, the court finds that the application of the Consumer Fraud Act in this case materially conflicts with New Jersey's Antitrust Act.
There is no dispute that plaintiffs' allegations of unconscionable commercial practices clearly fall within the jurisdiction of the New Jersey's Antitrust Act, which provides: "Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce, in this State, shall be unlawful." N.J.S.A. 56:9-3. The purpose of the act is to prevent trade-restraining practices, which ordinarily deprive the public of the benefits of a competitive market. E Z Sockets, Inc. v. Brighton-Best Socket Screw Mfg. Inc., 307 N.J.Super. 546, 704 A.2d 1364 (Ch.1996), aff'd 307 N.J.Super. 438, 704 A.2d 1309 (App.Div.1997). However, as stated in Daaleman and Lemelledo, overlapping jurisdiction does not necessarily mean that the CFA should not also apply to the present matter.
In its motion papers and at oral argument, defendant argued that the application of the CFA would impermissibly conflict with the standing requirements of the New Jersey Antitrust Act. There are no published New Jersey cases that support defendant's position. However, federal antitrust law does provide guidance for this court. N.J.S.A. 56:9-18 provides: "This act shall be construed in harmony with ruling judicial interpretations of comparable Federal antitrust statutes."
The statute clearly provides that New Jersey courts must look to federal case law for interpretation of the New Jersey statutes where New Jersey case law is silent. Kugler v. Koscot Interplanetary, Inc., 120 N.J.Super. 216, 293 A.2d 682 (Ch.Div.1972).
In Illinois Brick Co. v. Illinois, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707, (1977), the State of Illinois, on behalf of 700 municipalities brought an antitrust treble damages suit under § 4 of the Clayton Act alleging that concrete block manufacturers had fixed prices in violation of § 1 of the Sherman Act. As in the case before the court, plaintiffs did not purchase directly from defendants. Instead plaintiffs purchased masonry structures from general contractors who purchased from masonry contractors who purchased from defendants. The Court held that plaintiffs, as pass-through purchasers of defendants' products, did not have standing to bring suit under federal antitrust law. The Court held that only direct purchasers could bring such suit under the Act, reasoning that the allowance of indirect suits would "add whole new dimensions of complexity to treble-damages suits and seriously undermine their effectiveness." Id. at 737, 97 S.Ct. at 2070.
The Court also determined that to allow indirect plaintiffs to bring suit would be unfair as defendants are prohibited from setting forth the pass-through argument as an affirmative defense. See Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968), (where the Court held that defendant manufacturers could not argue that purchaser/retailer plaintiffs had mitigated their damages by passing on a portion of their increased costs to consumers).
In the instant matter, the record clearly demonstrates that plaintiffs' class is constituted of indirect or pass-through purchasers. Plaintiffs allege that they bought 3M products through independent retailers rather than directly from defendant. The holding in Illinois Brick clearly stands for the proposition that the instant *1018 plaintiffs would be barred from bringing suit under federal antitrust statutes. N.J.S.A. 56:9-18 incorporates Illinois Brick into New Jersey antitrust jurisprudence and bars plaintiffs from bringing suit under the New Jersey Antitrust Act.
This court finds that plaintiffs' attempt to bring suit under the Consumer Fraud Act is in direct conflict with the well-founded policies interpreting federal and New Jersey antitrust law. Plaintiffs in this case allege conduct that is traditionally classified under antitrust law. Although the CFA should be broadly applied, in this instance, allowing plaintiffs to move forward with their suit would undermine the standing requirements of the New Jersey Antitrust Act. "It is basic in the construction of legislation that every effort should be made to harmonize the law relating to the same subject matter." State v. Green, 62 N.J. 547, 554-55, 303 A.2d 312, 316 (1973).
The court finds that plaintiffs have no standing to bring suit under the Consumer Fraud Act. As such, defendant's motion to dismiss the complaint for failure to state a claim is granted.