911 A.2d 493 (2006)
389 N.J. Super. 130
ALLSTATE NEW JERSEY INSURANCE COMPANY, New Jersey Allstate Indemnity Company, and Allstate Insurance Company and Encompass Insurance, Commercial Insurance Company of Newark, Continental Insurance Company of New Jersey, Continental Insurance Co., National Fire Insurance Company of Hartford, Valley Forge Insurance Co., and Continental Casualty Co., Plaintiffs-appellants,
v.
CHERRY HILL PAIN AND REHAB INSTITUTE, Anna D. Lee, M.D., Dong H. Ko, M.D. A/K/A Don H. Ko, M.D., Rosemary Ariganello, RN, Brandi Malone, LPN, Patricia Clauss, LPN, Sybil Boiston, LPN, Ann Marie Sheehan, RN, Dawn Colofranson, LPN, Janet *494 Goetz, LPN, Margaret Ickes, LPN, Lorrie Witherow, LPN, Sherylene Gorski, LPN, Kathleen Diehl, LPN, Tracie Rice, LPN, Colleen Bowers, LPN, Lisa Gannon, LPN, Lori Sacco, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued November 6, 2006.
Decided December 7, 2006.
*495 Walter F. Kawalec, III argued the cause for appellants (Marshall, Dennehey, Warner, Coleman & Goggin, attorneys; Mr. Kawalec and Douglas M. Alba, Cherry Hill, on the brief).
Joseph P. Grimes, Cherry Hill, argued the cause for respondents (Bochetto & Lentz, attorneys; Gavin P. Lentz and Todd S. McGarvey, Philadelphia, PA, on the brief).
Barbara C. Zimmerman, Deputy Attorney General, argued the cause for amicus curiae State of New Jersey-Office of the Insurance Fraud Prosecutor (Stuart Rabner, Attorney General, attorney; Jeffrey C. Burstein, Assistant Attorney General, of counsel; Ms. Zimmerman, on the brief).
Before Judges LINTNER, SELTZER and C.L. MINIMAN.
The opinion of the court was delivered by
LINTNER, J.A.D.
This appeal involves the entire controversy doctrine, which formed the basis for an August 22, 2005, order dismissing the Burlington County Law Division complaint of plaintiffs Allstate Insurance Company[1] (Allstate) and Encompass Insurance Company[2] (Encompass) against defendants Cherry Hill Pain and Rehab Institute (Cherry Hill Pain), its principal, Dr. Anna Lee, and several of its employees, alleging violation of the Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1 to -30. We reverse and remand for further proceedings.
On March 25, 2004, Cherry Hill Pain filed a declaratory judgment complaint and jury demand in the Law Division, Camden County, against plaintiffs Allstate and Encompass and four other insurance carriers,[3] seeking personal injury protection (PIP) reimbursement for 262 of its patients, 97 of whom were insured by Allstate and 12 by Encompass. Additionally, Cherry Hill Pain, as the assignee of insured patients, had thirty-four complaints against various carriers pending in three other counties. On May 18, 2004, the judge entered an order consolidating all matters involving the same parties, for the purpose of discovery, regardless of the county of original venue, staying all PIP arbitration proceedings pending on behalf of Cherry Hill Pain, barring the further *496 filing of any actions by Cherry Hill Pain, tolling its statute of limitations on such claims, and extending the time in which the named defendants were required to file responsive pleadings.
Rather than filing an answer, Allstate and Encompass moved to dismiss the complaint for failure to state a claim upon which relief could be granted under R. 4:6-2(e), arguing that Cherry Hill Pain lacked standing because it did not obtain written consent from the PIP carriers for an assignment of the PIP benefits from its insureds as required by the policies and permitted by the Commissioner of Insurance. See N.J.S.A. 39:6A-3.1a; N.J.A.C. 11:3-4.9(a); Coal. for Quality Health Care v. N.J. Dep't of Banking & Ins., 348 N.J.Super. 272, 316-17, 791 A.2d 1085 (App.Div.), certif. denied, 174 N.J. 194, 803 A.2d 1165 (2002); Parkway Ins. Co. v. N.J. Neck & Back, 330 N.J.Super. 172, 186-87, 748 A.2d 1221 (Law Div.1998). The Camden County Law Division judge granted the motion dismissing Cherry Hill Pain's complaint, noting that neither Cherry Hill Pain nor its owner, Dr. Lee, had a valid assignment of benefits because they had not obtained written consent from either carrier, as required by the Allstate and Encompass policies.[4]
On March 5, 2005, plaintiffs filed the complaint alleging fraudulent billing in violation of the Insurance Fraud Prevention Act involving a total of 240 insureds,[5] seeking a declaration that defendants were not entitled to further payment, as well as disgorgement of monies previously paid.[6] Plaintiffs also filed an order to show cause (OTSC) for interim restraints, seeking to stay all pending court and arbitration proceedings between defendants and plaintiffs' insureds.
On May 27, 2005, the Burlington County Law Division judge denied plaintiffs' OTSC. On July 15, 2005, following oral argument, the judge granted defendants' motion to dismiss, stating:
I believe this is barred by the entire controversy doctrine because the facts and the legal theories are exactly the same. The defense to the claim in the Camden County matter is exactly the same as the allegations in the Burlington County matter. Okay. That's number one.
Number two, the complaint in the Camden County matter was proven to be meritless because it was dismissed. But, therethe issues were joined in that the plaintiffboth sides knew what the issues were in the case, and there was no prohibition for Allstate or Encompass to filing an answer before they filedthey didn't give up their right to file . . . the motion for dismissal by filing an answer. Since there's no prohibition to filing an answer, an answer should have been filed to join the issues. And, I think . . . this complaint is barred by the entire controversy doctrine.
*497 Objecting to the form of order submitted by defendants, plaintiffs proposed that the order dismiss only the 109 PIP claims raised in the Camden County action. The judge rejected plaintiffs' objection and entered the order dismissing plaintiffs' entire complaint.
Plaintiffs moved for reconsideration, arguing that, contrary to the judge's determination that there was "no prohibition for Allstate or Encompass to fil[e] an answer," R. 4:6-2 requires that a motion to dismiss for failure to state a claim be filed before further pleadings are made. Denying plaintiffs' motion, the judge concluded that R. 4:6-2 "didn't contemplate the Entire Controversy Doctrine and situations like this." The judge also concluded that the purpose of the entire controversy rule, to foster judicial economy, was not advanced "given what happened in Camden County, and what happened subsequent[ly] here."
Following the filing of plaintiffs' notice of appeal, we granted leave for the State's Office of the Insurance Fraud Prosecutor to participate as amicus curiae.[7]
On appeal, plaintiffs contend that the judge misapplied R. 4:6-2(e), arguing that they were obligated by the rule to file a motion to dismiss for failure to state a cause of action because of Cherry Hill Pain's lack of standing, rather than file an answer. Lack of standing may be raised as a failure to state a cause of action under R. 4:6-2(e). See In re Ass'n of Trial Lawyers of Am., 228 N.J.Super. 180, 182, 549 A.2d 446 (App.Div.), certif. denied, 113 N.J. 660, 552 A.2d 180 (1988); Island Mortgages of N.J. v. 3M, 373 N.J.Super. 172, 180, 860 A.2d 1013 (Law Div.2004). R. 4:6-2 states, in pertinent part:
Every defense, legal or equitable, in law or fact, to a claim for relief in any complaint, counterclaim, cross-claim, or third-party complaint shall be asserted in the answer thereto, except that the following defenses may at the option of the pleader be made by motion, with briefs: . . . (e) failure to state a claim upon which relief can be granted. . . . If a motion is made raising any of these defenses it shall be made before pleading if a further pleading is to be made. No defense or objection is waived by being joined with one or more other defenses in an answer or motion. (emphasis added).
Plaintiffs mistakenly assert that the use of the word "shall" in the rule required them to raise the defense of failure to state a cause of action by motion. The word "shall" in the rule applies to when a motion to dismiss for the enumerated defenses is to be filed "[i]f" the defendant chooses to raise them by motion. The rule gives the defendant the option to raise the enumerated defenses either by motion or in the answer. Indeed, the rule contemplates that the enumerated defenses that can be raised by motion may also be raised in an answer: "No defense or objection is waived by being joined with one or more other defenses in an answer. . . ."
The judge correctly interpreted R. 4:6-2 as not prohibiting defendants from raising the defense of failure to state a cause of action in an answer. See Pressler, Current N.J. Court Rules, comment 1 on R. 4:6-2 (2007) (stating that the defense "may be raised either by answer or by motion, but, if by motion, then before the party's required responsive pleading." (emphasis added)).
*498 We address the parties' contentions regarding application of the entire controversy doctrine. Plaintiffs argue that the judge erred in applying the entire controversy doctrine under the circumstances presented. Defendants maintain that the judge properly applied the doctrine because plaintiffs were attempting to obtain two bites of the apple. Defendants argue that, by opting to file a motion to dismiss in the face of the judge's order for consolidation, plaintiffs' decision to file the fraud claim in Burlington County, rather than file an answer in Camden County, represented inexcusable conduct mandating application of the doctrine.
The entire controversy doctrine evolved from common law. Prior to its inclusion in Article VI, Section 3, Paragraph 4 of the 1947 Constitution, it was recognized as a basic principle of common law. Cogdell v. Hosp. Ctr. at Orange, 116 N.J. 7, 15-16, 560 A.2d 1169 (1989); Smith v. Red Top Taxicab Corp., 111 N.J.L. 439, 440-41, 168 A. 796 (E. & A.1933). In Cogdell, supra, 116 N.J. at 23, 560 A.2d 1169, the Court recognized that the goals of the entire controversy doctrine were to foster judicial economy and efficiency by avoiding the waste and delay of piecemeal litigation and, at the same time, insure fairness to the parties. Before the decision in Cogdell, the entire controversy doctrine applied to mandatory joinder of claims. Cogdell extended the doctrine by applying it to mandatory joinder of parties in the appropriate circumstances. Id. at 26, 560 A.2d 1169. R. 4:30A was adopted shortly after the decision in Cogdell. In its initial form, R. 4:30A provided for preclusion in situations involving non-joinder of claims or parties where otherwise required to be joined under the entire controversy doctrine.
The cases after Cogdell[8] "spawned several diverse decisions dealing with the issue of non-joinder of parties, most notably attorneys alleged to have committed malpractice in the underlying litigation." Mitchell v. Charles P. Procini, D.D.S., P.A., 331 N.J.Super. 445, 451, 752 A.2d 349 (App.Div.2000). Our Supreme Court addressed these diverse decisions in Olds, supra, 150 N.J. at 428, 696 A.2d 633. In Olds, the Court acknowledged the criticism leveled at the entire controversy doctrine and mandatory joinder of parties, as well as the sanction of preclusion. Id. at 444-46, 696 A.2d 633. It emphasized that "preclusion is a remedy of last resort." Id. at 446, 696 A.2d 633.
The Court directed that the Committee on Civil Practice and its Entire Controversy Doctrine Subcommittee examine the exemptions that should apply to mandatory joinder, as well as any amendments that should be made to R. 4:30A. Id. at 449, 696 A.2d 633. It identified "the need for a procedural device, such as Rule 4:30A, to protect parties, the courts and the public from excessive and costly litigation." Id. at 447, 696 A.2d 633. The Court stressed that "mandatory joinder should not be confused with mandatory preclusion." Id. at 448, 696 A.2d 633.
In September 1998, R. 4:30A was amended, removing the previous provisions for non-joinder of parties and limiting preclusion under the entire controversy doctrine to non-joinder of claims. At the same time, R. 4:29-1(b) was adopted, permitting the trial court on its own motion *499 to "order the joinder of any person subject to service of process whose existence was disclosed by the notice required by R. 4:5-1(b)(2)." A revised version of R. 4:5-1(b)(2), also adopted in response to the decision in Olds, in part required parties to "include with the first pleading a certification as to whether the matter in controversy is the subject of any other action . . . contemplated; and, if so . . . identify such actions and all parties thereto." R. 4:5-1(b)(2) also imposes a "continuing obligation" on the parties to the action to "amend[] certification if there is a change in the facts stated in the original certification." R. 4:5-1(a) designates pleadings as complaints, answers, answers to cross- and counter-claims, third-party complaints, and answers to third-party complaints.
Under our present rules, "[t]he mandatory party-joinder component of the doctrine has been eliminated . . . `except in special situations involving both inexcusable conduct . . . and substantial prejudice to the non-party resulting from omission from the suit.'" Hillsborough Twp. Bd. of Educ. v. Faridy Thorne Frayta, P.C., 321 N.J.Super. 275, 283-84, 728 A.2d 857 (App. Div.1999) (quoting Pressler, Current N.J. Court Rules, comment 1 on R. 4:30A (1999)). Although the entire controversy doctrine has been retained with regard to mandatory joinder of claims, equitable considerations remain to "ease the path upon which the doctrinal bar travels." Id. at 284, 728 A.2d 857; see also Joel v. Morrocco, 147 N.J. 546, 555, 688 A.2d 1036 (1997) (recognizing "that `equitable considerations can relax mandatory-joinder requirements when joinder would be unfair'" (quoting Prevratil v. Mohr, 145 N.J. 180, 190, 678 A.2d 243 (1996))). "The twin pillars of the entire controversy doctrine are fairness to the parties and fairness to the system of judicial administration." Gelber v. Zito P'ship, 147 N.J. 561, 565, 688 A.2d 1044 (1997). "`[T]he polestar for the application of the [entire controversy] rule is judicial "fairness."'" K-Land Corp. No. 28 v. Landis Sewerage Auth., 173 N.J. 59, 74, 800 A.2d 861 (2002) (quoting Reno Auto Sales, Inc. v. Prospect Park Sav. & Loan Assoc., 243 N.J.Super. 624, 630, 581 A.2d 109 (App.Div.1990)).
"In considering fairness to the party whose claim is sought to be barred, a court must consider whether the claimant has `had a fair and reasonable opportunity to have fully litigated that claim in the original action.'" Gelber, supra, 147 N.J. at 565, 688 A.2d 1044 (quoting Cafferata v. Peyser, 251 N.J.Super. 256, 261, 597 A.2d 1101 (App.Div.1991)). Mandatory joinder of claims has been applied to bar claims involving commonality of facts in cases involving piecemeal litigation where parties, for strategic reasons, withhold claims concerning the underlying litigation, thus getting two bites of the apple. See, e.g., DiTrolio, supra, 142 N.J. at 279-80, 662 A.2d 494 (barring a second claim of malpractice against a hospital and its staff, following a malpractice suit for the same injury against the doctors). However, where claims are "separate and discrete" from those in the initial proceeding, the mandatory joinder of claims does not bar the subsequent action. Hillsborough Twp. Bd. of Educ., supra, 321 N.J.Super. at 285, 728 A.2d 857.
"The entire controversy doctrine bars a subsequent action only when a prior action based on the same transactional facts has been tried to judgment or settled." Arena v. Borough of Jamesburg, 309 N.J.Super. 106, 111, 706 A.2d 790 (App.Div.1998) (holding that a voluntary dismissal without prejudice will not preclude a subsequent action); see also Rycoline Prods., Inc. v. C & W Unlimited, 109 F.3d 883, 887-89 (3d Cir.1997); Kaselaan & D'Angelo Assocs., Inc. v. Soffian, 290 *500 N.J.Super. 293, 299, 675 A.2d 705 (App. Div.1996). "Only a judgment `on the merits' will preclude a later action on the same claim." Watkins v. Resorts Int'l Hotel & Casino, Inc., 124 N.J. 398, 415, 591 A.2d 592 (1991). Application of the entire controversy doctrine likewise should not be used to undermine public policy. Karpovich v. Barbarula, 150 N.J. 473, 482, 696 A.2d 659 (1997).
"[B]ecause the entire controversy doctrine is an equitable principle, its applicability is left to judicial discretion based on the particular circumstances inherent in a given case." Mystic Isle Dev. Corp., supra, 142 N.J. at 323, 662 A.2d 523. Here, the judge merely concluded that the purpose of the entire controversy doctrine is to foster judicial economy, which was not advanced on the facts before him. He did not make any specific findings regarding the various equitable considerations. In our view, the judge's decision to dismiss plaintiffs' complaint was a mistaken use of discretion in light of the totality of the circumstances presented. We conclude that the application of the entire controversy doctrine here is contrary to its objectives, namely, the promotion of conclusive determinations, public policy, party fairness, as well as judicial economy.
First and foremost, we note that "[t]here is a strong public policy in this State to root out insurance fraud." Varano, Damian & Finkel, L.L.C. v. Allstate Ins. Co., 366 N.J.Super. 1, 8, 840 A.2d 262 (App.Div.2004). Our Supreme Court has recognized the importance attached to the legislation to weed out insurance fraud, noting that "[i]nsurance fraud is a problem of massive proportions that currently results in substantial and unnecessary costs to the general public in the form of increased rates." Merin v. Maglaki, 126 N.J. 430, 436, 599 A.2d 1256 (1992). "[T]he [Insurance Fraud Prevention] Act is a comprehensive statute designed to help remedy high insurance premiums which the Legislature deemed to be a significant problem." State v. Sailor, 355 N.J.Super. 315, 319, 810 A.2d 564 (App. Div.2001); see also Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 172, 892 A.2d 1240 (2006). In Varano, supra, 366 N.J.Super. at 7, 840 A.2d 262 (quoting Gould & Eberhardt, Inc. v. City of Newark, 6 N.J. 240, 244, 78 A.2d 77 (1951)), we observed that the equitable doctrine of "`[e]stoppel cannot be interposed to protect an active wrongdoer.'" Addressing the strong public policy to combat insurance fraud, we held that Allstate's belated attempt to raise fraudulent treatment, after initially settling the plaintiff's PIP claim, "should not be rebuffed because it was raised belatedly." Id. at 8, 840 A.2d 262.
Because plaintiffs had not filed responsive pleadings at the time they filed their motion to dismiss, they were not required to file a certification regarding contemplated actions under R. 4:5-1. Cherry Hill Pain's claim against plaintiffs for treatment rendered to 109 insured patients, although dismissed with prejudice, was dismissed based upon lack of standing and failure to state a cause of action, not on the merits. There was no conclusive determination of either plaintiffs' claim that the treatment was billed but not rendered to those particular patients or defendants' claim that appropriate treatment was rendered.
Moreover, plaintiffs' complaint involved separate and discrete claims from those impleaded in Cherry Hill Pain's complaint. The Burlington County complaint alleged significantly more instances of alleged insurance fraud regarding almost two and one half times the number of the insured patients than patients for whom Cherry Hill Pain sought PIP benefits in the Camden *501 County complaint. So too, plaintiffs' complaint named and sought relief against a substantial number of additional defendants.
Finally, we are convinced that no meaningful judicial economy would be served by requiring plaintiffs to participate in the Camden County case. Cherry Hill Pain's Camden County complaint involved 153 patients insured by other carriers, for whom Cherry Hill Pain's assignment of PIP benefits were at least facially valid. It would be unfair to require plaintiffs to participate in an action involving those additional claims when they could extricate themselves by simply filing one motion attacking the sufficiency of the pleadings. Further, because the dismissal of Cherry Hill Pain's complaint did not involve a determination of the merits of defendants' claim that its patients, covered by plaintiffs' PIP benefits, received necessary treatment, defendants are not prejudiced in their defense of plaintiffs' fraud-based claims.
Reversed and remanded.
NOTES
[1] Allstate New Jersey Insurance Company includes New Jersey Allstate Indemnity Company and Allstate Insurance Company, thus, we refer to them collectively as Allstate.
[2] Encompass Insurance includes Commercial Insurance Company of Newark, Continental Insurance Company of New Jersey, Continental Insurance Company, National Fire Insurance Company of Hartford, Valley Forge Insurance Company, and Continental Casualty Company, thus, we refer to them collectively as Encompass.
[3] Also named in the complaint were: (1) Liberty Mutual Insurance Company (including Liberty Mutual Fire Insurance Co. and Liberty Insurance Corporation); (2) Prudential Property and Casualty Insurance Company of New Jersey; (3) Highpoint Safety and Insurance Management Corporation (including Highpoint Safety and Insurance Company, Highpoint Preferred Insurance Company, and Highpoint Property and Casualty Insurance Company); and (4) State Farm Indemnity Company.
[4] In support of their motion to dismiss Cherry Hill Pain's Camden County complaint, Allstate and Encompass also argued that Counts Four through Nine, alleging unjust enrichment, breach of the implied covenant of good faith and fair dealing, violations of New Jersey's Civil Racketeering statute, bad faith, and tortious interference, should be dismissed pursuant to R. 4:6-2(e) because they are not cognizable under N.J.S.A. 39:6A-5, which is the exclusive remedy available to recover PIP benefits. The Camden County Law Division judge granted the motion to dismiss those counts; however, the record does not provide her statement of reasons.
[5] 224 patients were insured by Allstate and 16 by Encompass.
[6] Plaintiffs' first complaint, filed on October 22, 2004, was dismissed without prejudice for lack of specificity.
[7] According to the State, Allstate provided a copy of its complaint to the State as required under N.J.S.A. 17:33A-7c. The State decided to intervene in the action, pursuant to N.J.S.A. 17:33A-7d. Nevertheless, before the State could file its motion to intervene, the trial court dismissed plaintiffs' complaint.
[8] Mortgagelinq Corp. v. Commonwealth Land Title Ins. Co., 142 N.J. 336, 338, 662 A.2d 536 (1995); Mystic Isle Dev. Corp. v. Perskie & Nehmad, 142 N.J. 310, 326-27, 662 A.2d 523 (1995); DiTrolio v. Antiles, 142 N.J. 253, 279-80, 662 A.2d 494 (1995); and Circle Chevrolet Co. v. Giordano, Halleran & Ciesla, 142 N.J. 280, 298-99, 662 A.2d 509 (1995), overruled by Olds v. Donnelly, 150 N.J. 424, 696 A.2d 633 (1997).