**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1479-17T3

SHORT HILLS ASSOCIATES IN
CLINICAL PSYCHOLOGY,
BARRY HELFMANN, PSY.D.,
ELISSA SAVRIN,PH.D., AYNN
HARTMAN, PH.D., and TERENCE
KEARSE, PH.D.,

     Plaintiffs-Appellants,

v.

ROTHBARD, ROTHBARD, KOHN
& KELLAR, JEFFREY M. ROTHBARD,
ESQ., CHRISTOPHER J. KELLAR, ESQ.,
and JAMES F. VISLOSKY, ESQ.,

     Defendants-Respondents.

_____

Submitted January 7, 2019 – Decided May 6, 2019

Before Judges Sumners and Mitterhoff.

On appeal from Superior Court of New Jersey, Law Division, Union County, Docket No. L-3056-16.

Piekarsky & Associates, LLC, attorneys for appellants (Justin J. Walker, on the briefs).

Wilson, Elser, Moskowitz, Edelman & Dicker LLP, attorneys for respondents (Gregg Kahn, of counsel and on the brief; John O'Toole, on the brief).

PER CURIAM

Plaintiffs Short Hills Associates in Clinical Psychology, Dr. Barry Helfmann, Psy.D, Elissa Savrin, Ph.D., Aynn Hartman, Ph.D., and Terence Kearse, Ph.D. (collectively SHACP), appeal from an order denying reconsideration of a Law Division summary judgment order dismissing their legal malpractice complaint against Rothbard, Rothbard, Kohn & Kellar, Jeffrey M. Rothbard, Esq., Christopher J. Kellar, Esq., and James F. Vislosky, Esq., (collectively the Rothbard Firm) based upon the entire controversy doctrine. We reverse, because, contrary to the motion court's interpretation of Olds v. Donnelly, 150 N.J. 424, 443 (1977), and Sklodowsky v. Lushis, 417 N.J. Super. 648, 655 (App. Div. 2011), as well as our interpretation of our Supreme Court's recent decision in Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman and Stahl, P.C., __ N.J. __ (2019),[1] SHACP was not required to pursue its legal malpractice claim in a previously settled collection action against its former

---

[1] Following oral argument, we granted SHACP's motion to take judicial notice of Dimitrakopoulos and consider the parties' supplemental briefs on the opinion. We denied the request for oral argument.

patient, which included the patient's counterclaim against SHACP and the Rothbard Firm.

I

We summarize the following facts from the record, viewing them "in the light most favorable to [plaintiff,] the non-moving party." Globe Motor Co. 23 v. Igdalev, 225 N.J. 469, 479 (2016) (citing R. 4:46-2(c)).

SHACP, which provides psychological evaluations and treatment for their patients, retained the Rothbard Firm on a regular basis to handle the collection of its delinquent patient accounts. In September 2014, the Rothbard Firm filed a collection lawsuit against a SHACP patient that included the patient's unredacted medical diagnoses. In response, the patient filed a counterclaim, alleging invasion of privacy, breach of the psychiatrist-patient privilege, and other claims against SHACP and the Rothbard Firm. SHACP then filed a cross-claim against the Rothbard Firm seeking indemnity and contribution. According to SHACP, despite the cross-claim, its counsel was in constant contact with the Rothbard Firm's counsel because they defended the patient's claims "in unity."

A little over a year later, the New York Times published a damaging article regarding SHACP's history of publicly releasing its patients' medical diagnoses. A month after the article was published, SHACP settled the

A-1479-17T3

collection lawsuit against its patient, which included dismissing the outstanding account claim. The Rothbard Firm was not a party to the settlement, and the record provided does not indicate if or how the cross-claim for indemnity and contribution was resolved.

On September 8, 2016, almost eight months after the collection lawsuit settlement, SHACP filed a legal malpractice complaint alleging that when the Rothbard Firm filed the collection lawsuit containing confidential medical diagnoses and codes, they breached their fiduciary duty and implied warranty of good faith and fair dealing. SHACP sought monetary damages based upon alleged injury to its business. The Rothbard Firm eventually moved for summary judgment, arguing, among other things, that SHACP's complaint was barred by the entire controversy doctrine.

At the conclusion of oral argument, the court issued its order and written decision granting the Rothbard Firm's motion. The court held that SHACP's legal malpractice claim was barred by the entire controversy doctrine because "it was required to be asserted in the underlying litigation between [the former patient] and SHACP/[the Rothbard Firm] because the claim could be most soundly and appropriately litigated and disposed of in a single comprehensive adjudication" – the collection lawsuit. The court reasoned SHACP was aware

of its legal malpractice claim when the patient served his counterclaim and it responded with a cross-claim for indemnity and contribution against the Rothbard Firm. According to the court, applying the entire controversy doctrine was equitable, and thus determined SHACP's reliance on Olds and Sklodowsky, was misplaced because the legal malpractice claim accrued once the collection lawsuit was filed and there was no "united front" between SHACP and the Rothbard Firm in the action.

SHACP's motion for reconsideration was denied. In its oral decision, the court relied upon the same reasoning it applied in granting summary judgment. This appeal followed.

## II

We begin with the principles that guide our analysis. Appellate review of a ruling on a motion for summary judgment is de novo, applying "the same standard governing the trial court[.]" Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014). Thus, we consider, as the motion judge did, "'whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.'" Id. at 406 (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).

5

"If there is no genuine issue of material fact," an appellate court "must then decide whether the trial court correctly interpreted the law."  DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (citation omitted).  We accord no deference to the trial judge's legal conclusions.  Nicholas v. Mynster, 213 N.J. 463, 478 (2013) (citing Zabilowicz v. Kelsey, 200 N.J. 507, 512-13 (2009)).

When we consider a trial judge's denial of a Rule 4:49-2 motion for reconsideration, we have determined:

> Reconsideration itself is a matter within the sound discretion of the [c]ourt, to be exercised in the interest of justice[.]  It is not appropriate merely because a litigant is dissatisfied with a decision of the court or wishes to reargue a motion, but should be utilized only for those cases which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence.
>
> [Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010) (citation omitted).]

Therefore, we will not disturb a judge's denial of a motion for reconsideration absent an abuse of discretion.  See id. at 289.

We turn next to entire controversy doctrine.  "The . . . doctrine is an equitable principle and its application is left to judicial discretion."  700

Highway 33 LLC v. Pollio, 421 N.J. Super. 231, 238 (App. Div. 2011) (citing Allstate N.J. Ins. Co. v. Cherry Hill Pain & Rehab. Inst., 389 N.J. Super. 130, 141 (2006)). "Th[e] doctrine 'embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy.'" Wadeer v. N.J. Mfrs. Ins. Co., 220 N.J. 591, 605 (2015) (quoting Highland Lakes Country Club & Cmty. Ass'n v. Nicastro, 201 N.J. 123, 125 (2009)). The doctrine applies when the claims of all parties arise out of the same common string of facts or circumstances. Ibid.

While this appeal was pending, on March 7, 2019, our Supreme Court recently addressed the entire controversy doctrine's application in a legal malpractice setting in Dimitrakopoulos. There, the initial action was a law firm's collection suit against its client for outstanding fees that resulted in a judgment entered in favor of the law firm. Dimitrakopoulos, __ N.J. __ (slip op. at 5-6). Three years later, the client filed a legal malpractice claim against the law firm. Id. (slip op. at 6). The motion court denied the law firm's Rule 4:6-2(e) motion to dismiss the complaint for failure to state a claim; rejecting the law firm's contention that the claim was barred under the entire controversy doctrine. Ibid.

7

After this court reversed the motion court, our Supreme Court reversed and reinstated the complaint. Id. (slip op. at 6-7). The Court ruled the undeveloped record was not detailed enough to determine whether it would be fair and equitable to bar the plaintiffs' legal malpractice claim under the entire controversy doctrine. Id. (slip op. at 14). The Court "reiterate[d] [its] holding in Olds . . . that the entire controversy doctrine does not compel a client to assert a legal malpractice claim against an attorney in the underlying litigation in which the attorney represents the client[,] 150 N.J. [at] 443." Id. (slip op. at 10). On the other hand, "[a] collection action brought by a law firm against its client, however, does not constitute such underlying litigation for purposes of the principle stated in Olds[,]" and the entire controversy doctrine may apply in that situation." Id. (slip op. at 10).

In sum, the Court held the following principles govern when determining whether the entire controversy doctrine should apply where a legal malpractice claim was not raised in the parties' prior collection action:

> First, in order for the entire controversy doctrine to bar a legal malpractice claim because that claim was not joined in a prior action, the two claims must "arise from related facts or the same transaction or series of transactions," Wadeer, 220 N.J. at 605 (quoting DiTrolio [v. Antiles, 142 N.J. 253, 267 (1995)]), but need not share common legal theories, ibid.; DiTrolio, 142 N.J. at 271 . . . .

A-1479-17T3

Second, the entire controversy doctrine does not require a client or former client to bring a legal malpractice case in the underlying action in which the attorney represented the client. Olds, 150 N.J. at 443-44.

Third, an attorney's collection action against the client, in which the attorney seeks payment of legal fees incurred in the representation of the client, is not an "underlying action" within the meaning of Olds. Accordingly, a client's legal malpractice claim that is not asserted in the attorney's collection action may be barred under the entire controversy doctrine.

Fourth, a court should not preclude a claim under the entire controversy doctrine if such a remedy would be unfair in the totality of the circumstances and would not promote the doctrine's objectives of conclusive determinations, party fairness, and judicial economy and efficiency. Wadeer, 220 N.J. at 605; K-Land [Corp. No.28 v. Landis Sewage Auth., 173 N.J. 59, 70 (2002)]; DiTrolio, 142 N.J. at 273-74 . . . .

[Dimitrakopoulos, __ N.J. __ (slip op. at 11).]

Hence, the Court held that where a counsel's collection lawsuit against a client negates the attorney-client confidences relationship, the equitable doctrine of entire controversy bars a legal malpractice claim in the collection action if it arises from the services that underlie the collection effort and the client had "'a fair and reasonable opportunity to have fully litigated'" the claim in the collection action. Id. (slip op. at 11) (citing DiTrolio, 142 N.J. at 273).

9

Guided by these principles, we reverse the motion court's order granting summary judgment dismissal of SHACP's complaint based upon its application of the entire controversy doctrine, and denying SHACP's reconsideration motion. In reaching this conclusion, we recognize that allowing SHACP to pursue their legal malpractice claims against the Rothbard Firm results in the adjudication of a dispute that arose from the Rothbard Firm's alleged negligence in filing the lawsuit against SHACP's former patient. SHACP was admittedly aware of their legal malpractice claims against the Rothbard Firm when the patient responded to the collection effort with a counterclaim alleging privacy violations by SHACP and the Rothbard Firm. We are also mindful that judicial efficiency would have been promoted had SHACP pursued its legal malpractice claims in the collection litigation. Nevertheless, equity dictates that the entire controversy doctrine not be applied here.

While Dimitrakopoulos is factually dissimilar to the case before us, it is instructive in our determination that summary judgment should not have dismissed SHACP's complaint. The initial action here was SHACP's effort to collect a bill for outstanding services from its patient, which was unrelated to the representation that the Rothbard Firm provided to SHACP. Second, the Rothbard Firm became a party to that dispute only when the patient

counterclaimed, alleging that the inclusion of his medical diagnoses in the action violated privacy laws. Dimitrakopoulos does not require the application of the entire controversy doctrine to summarily dismiss SHACP's complaint because the initial action was not an attorney's collection action against a client and SHACP was not being sued by the Rothbard Firm for non-payment of services. Moreover, there was no dispute regarding SHACP's attorney-client relationship with the Rothbard Firm as SHACP was represented by the Rothbard Firm in the collection action against the former patient.

This case fits into the situation the Court delineated in Dimitrakopoulos because SHACP's "litigation interests [and] . . . privileged communications [would] be imperiled if the entire controversy doctrine mandates the filing of a malpractice counterclaim" in the initial action. Id. (slip op. at 10). To require SHACP to file a legal malpractice claim against the Rothbard Firm would have created a clear potential to negatively impact its, as well as the firm's, defense to the patient's counterclaim. It was incumbent upon SHACP and the Rothbard Firm to cooperate with each other, and share discovery and litigation strategy to protect their respective interests throughout the collection action as expanded by the patient's response to being sued. In short, they had a continuing professional relationship.

A-1479-17T3

We find further support for our conclusion in both <u>Olds</u> and <u>Sklodowsky</u>, which both involved situations where a legal malpractice claim would compromise the attorney-client relationship between the parties. In <u>Olds</u>, the Court refused to apply the entire controversy doctrine, explaining that to require a party to assert a malpractice claim against his lawyer would "chill" or negatively affect the attorney-client relations. 150 N.J. at 440-41. The Court reasoned:

> The attorney, formerly the client's advocate, is made the adversary. The client is forced to expend time and money to engage a second attorney to pursue the attorney-malpractice claim. Because the first attorney is now a potential witness, that attorney's own interests are no longer aligned with those of the client. Although we do not suggest that potentially negligent attorneys would misrepresent facts, an attorney charged with malpractice, like any other litigant, would have an incentive to testify guardedly when sued by a former client.
>
> Thus, clients are put in the untenable position of either pursuing a claim against their attorney, whose negligence may never result in an unfavorable outcome, or forever forgoing a legal-malpractice action. Clients who are satisfied with their attorneys and want to maintain an otherwise satisfactory relationship may forgo the right to sue. That result does not provide the fairness that the entire controversy doctrine is designed to encourage.
>
> [<u>Olds</u>, 150 N.J. at 440-41.]

In Sklodowsky, this court concluded that the entire controversy doctrine should not be applied where "the client's attorney is already a party in an action that arose from the attorney's alleged negligent legal advice[,]" because it would "chill a client's relations with his or her attorney and cause the client's and the attorney's interests to diverge, potentially prejudicing them both." 417 N.J. Super. at 655. Simply put, a party should not be compelled to assert a legal malpractice claim in the initial suit where it gives rise to the contention it would "chill" or "compromise" the continuing professional relationship between the parties. Id. at 657. Hence, it would be unfair to apply the entire controversy doctrine under the facts of this case. Id. at 468.

Another factor in not applying the entire controversy doctrine to dismiss SHACP's complaint is that its damages did not accrue until after the collection action was settled, which is when SHACP realized its actual damages. See Grunwald v. Bronkesh, 131 N.J. 483, 495 (1993) ("Actual damages are those that are real and substantial as opposed to speculative. . . . In the legal-malpractice context, actual damages may exist in the form of an adverse judgment.").

Lastly, we reject the Rothbard Firm's argument that pursuant to Rule 4:5-1(b), SHACP's failure to disclose in the underlying litigation their intent to file

a legal malpractice claim against it does not apply because the collection action was a different controversy from the legal malpractice action. Moreover, if the rule applied, the motion court's discretion to sanction SHACP by dismissing its complaint for failure to disclose the legal malpractice claim would not have been warranted, because there was no showing that the Rothbard Firm was "substantially prejudiced" by the lack of notice. R. 4:5-1(b)(2).

Reversed and remanded for trial.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1479-17T3