J-S51023-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GIOVANNI REID | |
| Appellant | No. 1980 EDA 2014 |

Appeal from the PCRA Order June 16, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0933203-1991

BEFORE: GANTMAN, P.J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                 **FILED APRIL 01, 2016**

Giovanni Reid appeals *pro se* from the trial court's order denying his second petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.[1] After careful review, we reverse and remand for resentencing.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] We review an order denying collateral relief under the PCRA to determine whether evidence of record supports the findings of the PCRA court and whether its legal conclusions are free of error. **Commonwealth v. Mitchell**, 105 A.3d 1257, 1265 (Pa. 2014). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a de novo standard of review to the PCRA court's legal conclusions." **Id.** (citation omitted). Additionally, courts "will not entertain a second or subsequent request for PCRA relief unless the petitioner makes a strong prima facie showing" that the proceedings resulting in his conviction were so unfair that a miscarriage of justice occurred "or that that he was innocent of the crimes for which he was charged." **Commonwealth v.**
*(Footnote Continued Next Page)*

Reid is currently serving a life sentence for second-degree murder and related offenses. He was 16-years-old at the time he committed the instant offense. Our Court set forth the relevant facts underlying the case as follows:

> On August 9, 1991[,] at approximately 5:00 a.m., [Reid], Dwayne Bennett, DeJuan Bennett, Carlton Bennett, Tyrone Mackey, and Richard King were walking in the area of 17th and South Streets in Philadelphia, when they observed [the] victim Robert Janke at a telephone booth. Mackey, King, and DeJuan Bennett walked past the victim, but [Reid], Dwayne Bennett and Carlton Bennett lagged behind. The three men surrounded Janke, grabbed him by the neck and dragged him down the street. Dwayne Bennett then held a gun to the victim's head and demanded his money. After taking five dollars from the victim, [Reid] and Carlton Bennett held the victim and Dwayne Bennett shot him in the head, killing him.
>
> [Reid], Dwayne Bennett, and Carlton Bennett were arrested and charged with murder, robbery and conspiracy. Dwayne Bennett pled guilty to murder in the first degree. Appellant and Carlton Bennett were tried together before a jury. On January 27, 1993, [Reid] was convicted of murder in the second degree, robbery and conspiracy. The court immediately sentenced [Reid] to life imprisonment on the murder conviction, and concurrent terms of ten to twenty years of imprisonment on the robbery conviction and five to ten years of imprisonment on the conspiracy conviction.

**Commonwealth v. Reed**,[2] 1725 Philadelphia 1993 (memorandum decision)

(Pa. Super. filed 7/20/99), at 1-2.

*(Footnote Continued)* ───────────────

**Medina**, 92 A.3d 1210, 1214-15 (Pa. Super. 2014) (en banc) (citations omitted).

[2] We note that a prior panel of our Court refers to the appellant as Giovanni "Reed." **See Commonwealth v. Reed**, 1725 Philadelphia 1998 (unpublished memorandum) (filed July 20, 1999). However, in his *pro se*
*(Footnote Continued Next Page)*

After an unsuccessful direct appeal, *see Commonwealth v. Reed*, 643 A.2d 707 (Pa. Super. 1994), Reid filed his first PCRA petition,[3] *pro se*, which was ultimately denied, after a hearing, on April 6, 1998. Our Court affirmed the dismissal of the petition on July 20, 1999.

Reid filed the instant untimely PCRA petition, his second, on May 5, 2005.[4] In the petition, Reid claimed that his life sentence was unconstitutional pursuant to *Roper v. Simmons*, 543 U.S. 551 (2005).[5] However, after receiving notice from the trial court that it was going to dismiss his petition, Reid filed a supplemental claim, on March 31, 2006, alleging newly-discovered evidence in the form of a deposition of the murder victim's roommate, Wayne Richman. In this deposition, Richman averred that he saw and heard portions of the fatal attack while he was admittedly drunk, having consumed about fifteen beers and a few shots of whiskey and Sambuca in the hours before the shooting. Richman testified at an

*(Footnote Continued)* _____

brief, appellant spells his name as Giovanni "Reid." Therefore, we will use that spelling in the present appeal.

[3] Reid filed his first petition, *pro se*, on January 17, 1996. Counsel was appointed and filed an amended petition on January 22, 1997. Counsel filed a supplemental PCRA claim on April 28, 1997, raising a *Brady v. Maryland*, 373 U.S. 83 (1963), claim.

[4] Because the trial judge, the Honorable David. N. Savitt, was no longer sitting on the bench, the case was reassigned to the Honorable Denis P. Cohen.

[5] *See Roper*, *supra* (declaring that death penalty sentence for juvenile offenders under age of eighteen is unconstitutional).

evidentiary hearing on Reid's after-discovered evidence claim, acknowledging that he was drunk and using cocaine when he allegedly saw the events in question from a distance of about three hundred feet. Specifically, Richman testified that he heard either Reid or his co-defendant, Carlton Bennett, say "don't" immediately before the shooting and that only one person among the three conspirators (Carlton Bennett, Dwayne Bennett, and Reid) was within arm's length of the victim at the time of the shooting. The two other individuals, presumably Carlton Bennett and Reid, were approximately 20 feet away from the victim at the time of the shooting.

Reid filed an appeal; however, on March 10, 2008, while the appeal was pending, Reid filed a motion for remand to further amend his petition. On April 23, 2008, our Court issued a *per curiam* order deferring the remand petition to the panel assigned to decide the merits of the appeal. Ultimately, on April 27, 2009, our Court granted Reid's motion, permitting him to file an amended PCRA petition and instructing the PCRA court to conduct further proceedings "as it considers appropriate following the filing of Reid's amended PCRA petition[.]" **Commonwealth v. Reid**, No. 2122 EDA 2007 (Pa. Super. filed April 27, 2009).

On May 27, 2009, Reid filed an amended PCRA petition. After hearing Richman's testimony, the trial judge found his inconsistent accounts[6] incredible and denied PCRA relief. This appeal follows.

On appeal, Reid presents the following issues for our consideration:

(1) Did the Court below err in holding that the proffered testimony of Wayne Richman did not constitute legally sufficient after discovered evidence, and for making an erroneous credibility determination which is not supported by the record?

(2) [T]he state court erred by not providing any relief on his claim raised pursuant to *Miller v. Alabama*, [] 132 S.Ct. 2455 (2012), holding that a mandatory life-without-parole sentence for a juvenile violates the Eighth and Fourteenth Amendments to the United States Constitution?

Before reaching the merits of Reid's claims on appeal, we first must address the jurisdictional requirements of the PCRA. A PCRA petition, including a second or subsequent one like Reid's, shall be filed within one year of the date the underlying judgment becomes final. *See* 42 Pa.C.S. § 9545(b)(1). Instantly, Reid's judgment of sentence became final, for purposes of the PCRA, on March 17, 1994, when the time expired for him to file a petition for allowance of appeal to our Supreme Court. *See* Pa.R.A.P. 1113 (30 days to file petition for allowance of appeal with Pennsylvania Supreme Court). Thus, Reid had to file his petition within one year of that

---

[6] Richman's testimony was memorialized in the following ways: 3/13/06 video deposition; 3/17/07 taped statement made to LaTasha Williams; 11/30/10 testimony before Judge Hughes; and 9/11 & 12/12 Skype conversations before the Court.

date, or by March 17, 1995, in order for it to be considered timely under the PCRA. *See* 42 Pa.C.S. § 9545(b)(3). His current PCRA petition was filed on May 5, 2005 – more than 11 years after his judgment of sentence became final. Accordingly, Reid's petition is patently untimely.

In order to overcome the PCRA time bar, however, Reid invokes the newly-discovered facts exception set forth in 42 Pa.C.S. § 9545(b)(1)(ii). *See* Amended Petition for Post Conviction Collateral Relief, 5/27/09, at ¶ 8p. Under section 9545(b)(1)(ii), a petitioner must plead and prove that "the facts upon which the claim is predicated were unknown to [him] and could not have been ascertained by the exercise of due diligence[.]" 42 Pa.C.S. § 9545(b)(1)(ii).[7] When a patently untimely petition is not eligible for one of the three exceptions outlined in section 9545(b)(1), a PCRA court has no power to address the substantive merits of the petitioner's claims. *Commonwealth v. Gamboa-Taylor*, 753 A.2d 780 (Pa. 2000).

Our Court recently clarified the distinction between a newly-discovered evidence exception under the PCRA and an after-discovered evidence claim:

> The timeliness exception set forth at *Section 9545(b)(1)(ii)* has often mistakenly been referred to as the "after-discovered evidence" exception. *Bennett*, [930 A.2d 1264 (Pa. 2007)] at 1270. "This shorthand reference was a misnomer, since the plain language of *subsection (b)(1)(ii)* does not require the

---

[7] Additionally, in order to succeed under an exception to the PCRA time bar, a petitioner must prove that he presented the newly discovered evidence within 60 days of the date the claim could have been presented. *See* 42 Pa.C.S. § 9545(b)(2).

petitioner to allege and prove a claim of 'after-discovered evidence.'" ***Id.*** Rather, as an initial jurisdictional threshold, *Section 9545(b)(1)(ii)* requires a petitioner to allege and prove that there were facts unknown to him and that he exercised due diligence in discovering those facts. ***See*** 42 Pa.C.S.A. § 9545(b)(1)(ii); ***Bennett***, ***supra***. Once jurisdiction is established, a PCRA petitioner can present a substantive after-discovered evidence claim. Thus, the "new facts" exception at *Section 9545(b)(1)(ii)* does not require any merits analysis of an underlying after-discovered-evidence claim. ***Id.*** [] at 1271.

***Commonwealth v. Brown***, 111 A.3d 171, 176-77 (Pa. Super. 2015) (italics in original).

Instantly, Reid has pleaded that he was unaware of Richman's testimony until Richman's "unsolicited email communication with Mr. Reid's supporters' website on February 6, 2006." Amended Petition for Post Conviction Collateral Relief, 5/27/09, at ¶ 8q. This claim suffices to prove the "unknown facts" prong of section 9545(b)(1)(ii).

With regard to the "due diligence" prong of section 9545(b)(1)(ii), Reid asserts that "[p]rior to the receipt of th[e February 6, 2006] email, [he] had no reason to believe that Mr. Richman had any information relevant to the manner in which [the victim] was killed, since the police Investigation Interview Record did not disclose that Mr. Richman saw the murder take place." ***Id.*** at ¶ 8r. However, the substance of Richman's signed statement to the police does not bear out these assertions.

Just six hours after the shooting, Richman made a statement to the police in which he told them that he found out, after the fact, that he had been at the same party with the victim on the night of the murder, that he

did not see the victim while they were at the party,[8] and that he came home before the victim that evening. Wayne Richman Statement to Police, 8/10/91, at 1. Richman informed the police that he worked with the victim at the TGI Friday's restaurant located at 22nd Street and the Benjamin Franklin Parkway, that he had been the victim's roommate for over one month, and that he and the victim had known each other for two months. *Id.* The detectives asked Richman if he knew how the victim arrived home on the night of the shooting, to which Richman replied, "no." *Id.* at 2. They also asked Richman if the victim usually carries money, a wallet or any jewelry with him when he is out; Richman replied, "money and a wallet with credit cards." *Id.* Notably, nowhere in the statement do the detectives ask Richman if he witnessed the shooting or had any information about the shooting.

In *Commonwealth v. Burton*, 121 A.3d 1063 (Pa. Super. 2015) (en banc), our Court recently had the opportunity to clarify the due diligence prong for untimely PCRA petitions invoking section 9545(b)(1)(ii). In *Burton*, the defendant had been convicted of first-degree murder in the strangulation death of the victim in the Allegheny County jail. Burton's co-defendant was convicted of conspiracy, but acquitted of murder. Almost ten

---

[8] In contrast to this statement, at the November 30, 2010 PCRA hearing, Richman testified that while he did not go to the party with the victim that evening, he did see the victim at the party. N.T. PCRA Hearing, 11/30/10, at 58.

years after he was sentenced, Burton purportedly received a letter from the Pennsylvania Innocence Project which had enclosed copies of a motion to expunge filed by his co-defendant, wherein the co-defendant alleged that he killed the victim in self-defense, had been advised not to use this defense at trial, and as a result "an innocent man went to jail for a crime that [the co-defendant] committed." *Id.* at 1066.

On appeal from the dismissal of his second PCRA petition, Burton acknowledged that his PCRA petition was untimely, however, he claimed that he had established that his after-discovered facts claim fell within the PCRA's timeliness exception set forth at section 9545(b)(1)(ii). Our Court phrased the inquiry on appeal as what "is the appropriate level of diligence required of an untimely PCRA petitioner" under section 9545(b)(1)(ii). *Id.* at 1070. Citing to case law that analyzed the concept of due diligence, we noted that "[d]ue diligence demands that the petitioner take *reasonable steps* to protect his own interests[.]" *Id.* (citations omitted) (emphasis in original). Ultimately, the **Burton** Court held "due diligence requires neither perfect vigilance nor punctilious care, but rather it requires reasonable efforts by a petitioner, based on the particular circumstances, to uncover facts that may support a claim for collateral relief." *Id.* at 1071.[9]

_____

[9] Although not relevant to our decision today, it is important to note that in **Burton**, our Court held that for purposes of a due diligence analysis, the presumption of access to information available in the public domain does not apply where an untimely PCRA petitioner is *pro se*.
*(Footnote Continued Next Page)*

A due diligence inquiry is, undoubtedly, fact-sensitive and dependent upon the circumstances presented. *Id.* at 1070. Instantly, we do not find that Reid has met the due diligence prong of section 9545(b)(1)(ii) where he failed to investigate Richman as a potential witness after the murder. Richman was the victim's roommate and co-worker at the time of the shooting, had been at the same party with the victim on the evening of the shooting, and was home when the shooting occurred just one block from their shared apartment.[10] *Commonwealth v. Carr*, 868 A.2d 1164 (Pa. Super. 2001) (due diligence requires that petitioner take reasonable steps to protect own interests). Reid knew where Richman lived and knew that the police had met with Richman immediately following the murder. Where the police investigation failed to reveal if Richman knew anything about the details of the murder or, whether he, himself, could have been involved in the crime, defense counsel's reasonable investigation of the witness could have uncovered the new facts earlier.

Having failed to explain why he could not have learned the "new" facts earlier with the exercise of due diligence, Reid cannot prevail on his attempt to plead and prove the timeliness exception under section 9545(b)(1)(ii).

_(Footnote Continued)_ ─────────────────

[10] While Richman left the Philadelphia area in December 1991, he continued to reside in the same apartment he had shared with the victim for four months following the shooting. He returned to Bucks County, Pennsylvania, and resided there for four months from June 1992-September 1992.

*Cf. Commonwealth v. Medina*, 92 A.3d 1210 (Pa. Super. 2014) (defendant exercised due diligence under section 9545(b)(1)(ii) where he had no way of knowing that detective had allegedly coerced testimony of key murder witness which prompted witness to lie at trial and where Commonwealth's prosecutors claimed that even they did not know of detective's conduct); *Commonwealth v. Davis*, 86 A.3d 883, 891 (Pa. Super. 2014) (where first-degree murder defendant filed PCRA petition alleging witnesses testified against him pursuant to undisclosed agreement with Commonwealth, our Court held petitioner exercised due diligence where it would be unreasonable to expect *pro se* petitioner to locate transcript from unrelated case where witness's perjury revealed).

Because Reid's petition is patently untimely and does not meet the newly-discovered facts exception pled in his petition, the PCRA court did not have jurisdiction to address the substantive merits of Reid's after-discovered evidence claim. *Gamboa-Taylor*, *supra*.[11]

_____

[11] Even if we were to find no jurisdictional hurdle to deciding Reid's untimely petition, he would lose on the substantive merits of his after-discovered evidence claim. In determining whether a petitioner is entitled to PCRA relief upon a claim of after-discovered evidence, it is the PCRA petitioner's burden to "[d]emonstrate [by a preponderance of the evidence] that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted." *Commonwealth v. Pagan*, 950 A.2d 270, 292 (Pa. 2008). In considering the prejudice prong of the after-discovered evidence test, courts are to look to "the integrity of the alleged after-discovered evidence, the
*(Footnote Continued Next Page)*

With regard to Reid's final issue invoking *Miller v. Alabama*, 132 S.Ct. 2455 (2012), we conclude that he is entitled to relief based upon the United States Supreme Court's recent decision, *Montgomery v. Louisiana*, 136 S. Ct. 718 (filed January 25, 2016, as revised on January 27, 2016). Although at the time Reid filed his petition he was not entitled to retroactive application of *Miller*, *see Commonwealth v. Cunningham*, 81 A.2d 1 (Pa. 2013),[12] during the pendency of this appeal the United States Supreme

*(Footnote Continued)* _____

motive of those offering the evidence, and the overall strength of the evidence supporting the conviction." *Commonwealth v. Padillas*, 997 A.2d 356, 365 (Pa. Super. 2010).

Richman admitted to consuming 15 beers and several shots of whiskey on the night of the murder. In fact, when Richman returned home on the evening of the murder, he passed out from his alcohol consumption, and was unable to recall how he even got home that evening. In addition, he was an admitted cocaine addict who suffered from occasional blackouts. At the time of the murder Richman had just awoken from a drunken stupor. The parties stipulated that Richman was standing approximately 295-297 feet from site of the homicide when he heard the victim make a whimpering sound and heard an individual, standing approximately 10-20 feet from the victim, yell, "no" or "don't." Richman then proceeded to go back to his apartment and drink more alcohol. Richman never told anyone about his first-hand observations of the murder until 2006 – 15 years after the murder – after he read information on a website about the murder. Based on these facts, we are bound by the trial court's credibility assessment of Richman's testimony as it is supported by the record. *See Commonwealth v. Williams*, 732 A.2d 1167, 1181 (Pa. 1999); *see also Commonwealth v. Abu-Jamal*, 720 A.2d 79 (Pa. 1988).

[12] In *Cunningham*, the Pennsylvania Supreme Court determined that the *Miller* holding does not apply retroactively to an inmate, serving a life sentence without parole, who has exhausted his direct appeal rights and is proceeding under the PCRA. Moreover, in *Commonwealth v. Cintora*, 69 A.3d 759 (Pa. Super. 2013), our Court found that *Miller* does not qualify as

*(Footnote Continued Next Page)*

- 12 -

Court issued ***Montgomery***, which concluded that the holding of ***Miller*** is a substantive rule of constitutional law to which state collateral review courts were required, as a constitutional matter, to give retroactive effect. ***Id.*** at 736.

The Supreme Court cautioned in ***Montgomery*** that a court has no authority to leave in place a conviction or sentence that violates a substantive rule like ***Miller***, regardless of whether the conviction or sentence became final before the rule was announced. ***Id.*** at 724. In ***Miller***, ***supra***, the United States Supreme Court held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile homicide offenders." ***Miller***, 132 S.Ct. at 2469. Moreover, the ***Miller*** Court recognized that before sentencing those juveniles, a judge or jury must "have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles," ***id.*** at 2476, by "tak[ing] into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." ***Id.*** at 2469.

In the wake of ***Montgomery***, our Court issued a decision to reverse and remand cases on collateral appeal where a petitioner claimed that he or

---
*(Footnote Continued)* ————————————

a timeliness exception under section 9545(b)(1)(ii) or (iii) of the PCRA. However, ***Cunningham***, ***Cintora*** and their progeny are effectively no longer good law as a result of ***Montgomery***.

- 13 -

she was entitled to relief pursuant to **Miller**. *See Commonwealth v.* *Secreti*, 2016 PA Super 28 (Pa. Super. 2016) (interpreting **Montgomery** as making retroactivity under **Miller** effective as of the date of the **Miller** decision).

Accordingly, because Reid was a juvenile at the time of the instant offense, his life sentence without parole is, by definition, unlawful under **Miller** and **Montgomery**. Therefore, we reverse the order of the PCRA court, and remand this case for resentencing.[13]

Order reversed. Remanded for resentencing. Jurisdiction relinquished.[14]

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/1/2016

_____

[13] Although Reid has filed a post-submission communication attaching **Montgomery** pursuant to Pa.R.A.P. 2501(b), as well as an application for relief, we are bound to follow the procedure set forth in **Secreti**. Therefore, we herein deny his application as moot.

[14] We recognize that while Reid's second-degree murder sentence, itself, may be unlawful, his underlying conviction stands.